NEWBY, Justice.
In this case we consider the statutory requirement that a trial court make certain findings of fact in matters involving the legal separation of a parent and child. Though a trial court is required to make written findings of fact in a permanency planning order that consider the factors in section 7B-507 of our General Statutes, these findings *166 need not recite the statutory language verbatim. When reviewing the sufficiency of such orders, an appellate court should consider whether the trial court’s findings of fact address the substance of the statutory requirements. Further, even if the permanency planning order is deficient standing alone, the appellate court should review that order in conjunction with the trial court’s termination of parental rights order to determine whether the statutory requirements are met. In some instances, a deficiency in one may be cured by the other. In this case, because both the permanency planning order and the termination of parental rights order comply with the statutory mandate, we reverse the decision of the Court of Appeals.
Respondent Mother appealed after the trial court entered two orders that (1) ceased reunification efforts between respondent and her children, L.M.T. and A.M.T., (“cease reunification order”) and (2) terminated respondent’s parental rights (“termination order”). At the Court of Appeals respondent argued that the trial court’s cease reunification order failed to satisfy section 7B-507, which requires trial courts to “make[ ] written findings of fact that” further reunification efforts would be “futile” or “inconsistent with the juvenile’s health, safety, and need for a safe, permanent home.” N.C.G.S. § 7B-507(b)(l) (2011). The Court of Appeals acknowledged that in the cease reunification order the trial court “made numerous and detailed findings addressing respondent’s troubled case history.” In re L.M.T.,_N.C. App. _, _ S.E.2d_, No. COA12-743, 2012 WL 6595388, at *2 (Dec. 18, 2012) (unpublished). Moreover, the Court of Appeals found “sufficient evidence in the record to support the required findings.” Id. at *3. Nonetheless, the Court of Appeals determined that the cease reunification order contained “no finding explicitly linking those facts with any of the factors listed in N.C. Gen. Stat. § 7B-507, including the futility of further reunification efforts or that further efforts would be inconsistent with the juveniles’ health, safety, and need for a safe, permanent home.” Id. at *2. Based on these perceived deficiencies in the cease reunification order, and without considering the termination of parental rights order, the Court of Appeals reversed both orders and remanded for additional findings. Id. at *3.
We allowed discretionary review to consider the requirement that a trial court make certain findings of fact under subsection 7B-507(b) of our Juvenile Code. In re L.M.T., _ N.C. _, 738 S.E.2d 359 (2013). The purpose of the Juvenile Code is, in part, to “provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with pre *167 venting the unnecessary or inappropriate separation of juveniles from their parents” and to ensure “that the best interests of the juvenile are of paramount consideration by the court.” N.C.G.S. § 7B-100(4), (5) (2011). The General Assembly further stated that “when it is not in the juvenile’s best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time.” Id. § 7B-100(5). The Juvenile Code strikes a balance between the constitutional rights of a parent and the best interests of a child, id. § 7B-100(3) (2011) (stating that a purpose of the Juvenile Code is “[t]o provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles’ needs for safety, continuity, and permanence”), and provides a protective framework when a juvenile is “alleged to be abused, neglected, or dependent,” id. § 7B-300 (2011). See In re R.T.W., 359 N.C. 539, 553, 614 S.E.2d 489, 498 (2005) (“Parents’ fundamental right to control their children at some point gives way to the state’s interest in the welfare of the child. In Subchapter I of our Juvenile Code, the General Assembly has established procedures to safeguard parental rights while simultaneously providing for the removal of children and even the termination of parental rights.”).
To advance the Juvenile Code’s dual purpose of protecting parental rights and promoting the best interests of the child, subsection 7B-507(b) requires that trial courts make written findings of fact in orders that place “a juvenile in the custody or placement responsibility of a county department of social services.” N.C.G.S. § 7B-507(b) (2011). Relevant to the case at hand, that statute mandates:
[T]he court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile’s health, safety, and need for a safe, permanent home within a reasonable period of time[.]
Id. Strict adherence to this statute ensures that the trial court fulfills the aspirations of the Juvenile Code by allowing our appellate courts to conduct a thorough review of the order. While trial courts are advised that use of the actual statutory language would be the best practice, the statute does not demand a verbatim recitation of its language as was required by the Court of Appeals in this case. Put differently, the order must make clear that the trial court considered the evidence in light of whether reunification “would be futile or would *168 be inconsistent with the juvenile’s health, safety, and need for a safe, permanent home within a reasonable period of time.” The trial court’s written findings must address the statute’s concerns, but need not quote its exact language. On the other hand, use of the precise statutory language will not remedy a lack of supporting evidence for the trial court’s order.
Our review of the cease reunification order in this case “is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law.” In re P.O., 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citing In re Eckard, 148 N.C. App. 541, 544, 559 S.E.2d 233, 235, disc. rev. denied, 356 N.C. 163, 568 S.E.2d 192 (2002)). The trial court’s findings of fact are conclusive on appeal if supported by any competent evidence. Id. (citing In re Weiler, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003)).
At the permanency planning review hearing, the trial court considered extensive evidence from multiple witnesses, including respondent, about respondent’s continued drug abuse, which she admitted occurred in the presence of her children; her lack of employment, attempted suicide, and confessed deception of the court; her involvement in domestic violence with her husband; and other repeated instances of behavior inconsistent with the best interests of the juveniles. That evidence supported the following findings of fact contained in the cease reunification order:
The Respondent Mother has now disclosed that she has a substance abuse problem, primarily related to prescription drugs.
[Respondent Mother’s drug use became] increasingly worse . . . while she was in the process of seeking reunification with the juveniles.
There have been instances of domestic violence between the Respondent Mother and her now husband .... At least one of those incidents involved [respondent’s] use of a knife. . . .
The environment of the Respondent Mother’s home is not conducive to raising children. In fact, the environment that the Respondent Mother and her husband have created is injurious.
That while the Court, the Department, the Guardian ad Litem and everyone else involved was working toward the reunification process, the Respondent Mother was sinking deeper and deeper into an abyss of domestic violence and drug abuse all the while *169 covering it up and refusing to acknowledge the fact of its existence in order that the Court, the Department, the Guardian ad Litem and others surrounding her could assist her and help the juveniles. The deception of the Court during this process is bad enough, but the Respondent Mother has completely let her children down.
The Respondent Mother and her husband are facing eviction and have received a notice to vacate their housing ....
[The juveniles] are in need of permanence and deserve a fresh start.
The Court determines that in the best interest of the juveniles, the permanent plan should now be changed to that of placement with other Court approved caretakers with a concurrent plan of adoption.
Return of the juveniles to the custody of the Respondents would be contrary to the welfare and best interest of the juveniles.
While these findings of fact do not quote the precise language of subsection 7B-507(b), the order embraces the substance of the statutory provisions requiring findings of fact that further reunification efforts “would be futile” or “would be inconsistent with the juvenile’s health, safety, and need for a safe, permanent home within a reasonable period of time.” N.C.G.S. § 7B-507(b)(l). As an example, the trial court’s finding that “the environment that the Respondent Mother and her husband have created is injurious” indicates that further reunification efforts would be “inconsistent” with the juveniles’ “health” and “safety.” Id. Likewise, the trial court’s findings of fact related to respondent’s drug abuse, participation in domestic violence, deception of the court, and repeated failures at creating an acceptable and safe living environment certainly suggest that reunification efforts “would be futile.” Id. Moreover, these findings clearly support the trial court’s conclusions that “[r]eturn of the juveniles ... is contrary to the welfare and best interest of the juveniles,” “[t]hat in the best interest of the juveniles, legal and physical custody should remain with the Cumberland County Department of Social Services,” and “[t]hat the Cumberland County Department of Social Services should be relieved of reunification and visitation efforts with the Respondents.”
Even if the cease reunification order standing alone had been insufficient, that would not end the appellate court’s inquiry. Parents *170 may seek appellate review of cease reunification orders only in limited circumstances. In this case, respondent appealed under subsection 7B-1001(a)(5)(a), which provides that
a. The Court of Appeals shall review [an] order [entered under section 7B-507] to cease reunification together with an appeal of the termination of parental rights order if all of the following apply:
1. A motion or petition to terminate the parent’s rights is heard and granted.
2. The order terminating parental rights is appealed in a proper and timely manner.
3. The order to cease reunification is identified as an issue in the record on appeal of the termination of parental rights.
Id. § 7B-1001(a)(5) (2011). In other words, if a termination of parental rights order is entered, the appeal of the cease reunification order is combined with the appeal of the termination order.
Despite the General Assembly’s plain language that we are to “review the order to cease reunification together with an appeal of the termination of parental rights order,” id. (emphasis added), respondent urges the Court to consider each order by itself. Had the General Assembly intended to so limit our scope of review, it could have clearly drawn such a distinction. Rather, the legislature unambiguously instructed our appellate courts to review both orders “together.” The word “together” is defined to include “at one time,” “with each other,” and “considered as a whole.” Webster’s Third New International Dictionary 2404 (1967). Accordingly, we read this statute to mean that we are to look to both orders “with each other,” id., to determine whether the trial court has made sufficient findings of fact. Because we consider both orders “together,” incomplete findings of fact in the cease reunification order may be cured by findings of fact in the termination order. This application of the statute is consistent with the “paramount” aim of the Juvenile Code to provide for “the best interests of the juvenile” within a “reasonable amount of time.” N.C.G.S. § 7B-100(5); see also Act of Aug. 23, 2005, ch. 398, 2005 N.C. Sess. Laws 1455 (captioned “An Act to Amend the Juvenile Code to Expedite Outcomes for Children and Families Involved in Welfare Cases and Appeals and to Limit the Appointment of Guardians ad Litem for Parents in Abuse, Neglect, and Dependency Proceedings.”); *171 cf. In re M.I.W., 365 N.C. 374, 381, 722 S.E.2d 469, 474 (2012) (“Our holding [ensures that the best interest of the juvenile are of paramount consideration] by minimizing procedural delay that interferes with addressing the needs of the child when that delay is unnecessary • to protect the rights of parents.”).
Though the issue was not addressed by the Court of Appeals, to provide finality in this case we now shift our attention to the sufficiency of the termination of parental rights order. In regards to this order, at the Court of Appeals respondent challenged only the trial court’s conclusion of law that terminating her parental rights would be in the best interests of her children.
“Once the trial court has found a ground for termination, the court then considers the best interests of the child in making its decision on whether to terminate parental rights.” In re S.N., 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff’d per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009). When making a decision on a child’s best interests, section 7B-1110 requires the trial court to consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C.G.S. § 7B-1110 (2011). “We review this decision on an abuse of discretion standard, and will reverse a court’s decision only where it is ‘manifestly unsupported by reason.’ ” In re S.N., 194 N.C. App. at 146, 669 S.E.2d at 59 (citation omitted); see also In re Montgomery, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984) (“[T]he court’s decision to terminate parental rights is discretionary.”).
At the termination of parental rights hearing, the trial court again took extensive evidence regarding domestic violence, lack of necessary medical care for the juveniles,' respondent’s admitted drug abuse and related criminal activity, her neglect of the juveniles while they were visiting her, specifically that they were not “fed” or “bathed,” her *172 failure to obtain a job and pay child support, and her struggles with mental illness. The court heard further testimony that respondent had made little progress toward changing the circumstances that initially led to the removal of her children and that another family was interested in permanently adopting them. The trial court made the following findings of fact:
That the Respondent Mother and [her husband] have demonstrated a pattern of failing to provide appropriate care for the juveniles and the Court finds that it is probable that this neglect would be repeated if custody of the juveniles was returned to the Respondent Mother.
That the Respondent Mother’s situation has not improved, and based on the evidence presented on this date, the juveniles would be subjected to irreparable harm if the juveniles were returned to the home of the Respondents.
Since [the Department of Social Services was relieved of reunification and visitation efforts], the Respondent Mother has not made efforts to communicate with the juveniles by sending any cards, gifts, or letters to the juveniles.
The Respondent Mother has willfully failed to pay any amount towards the costs of care for the juveniles. The Respondent Mother is physically and financially able to do so.
The Respondents have demonstrated a pattern of failing to provide appropriate care for the juveniles. It is highly probable that neglect would be repeated if custody of the juveniles was returned to either of the Respondents. The Respondents have neglected the welfare of the juveniles for several years. This behavior is likely to continue into the foreseeable future.
Additionally, the court concluded that “based on the tender age of the juveniles, the likelihood of adoption for each of the juveniles is great,” that there is a “minimal bond” between respondent and her children, and that the juveniles “have begun to adjust” to their “potential adoptive home.” Given the totality of the evidence and the trial court’s extensive order, the court clearly considered the factors in section 7B-1110. Viewing the trial court’s decision through the lens of the abuse of discretion standard, we cannot say that its determination was manifestly unsupported by reason, and we must thus defer to the trial court’s judgment “that it is in the best interest of these juveniles for the purpose of obtaining safety, permanence, and stability that the parental rights of the Respondents ... be terminated.”
*173 Accordingly, we conclude that the trial court’s orders ceasing reunification and terminating respondent’s parental rights were each sufficient standing alone and should have been affirmed. The Court of Appeals erred both in its analysis of the cease reunification order and in its determination that the cease reunification order was deficient without considering that order in light of the findings of fact in the termination order. Ending a parent-child relationship is a decision the court must weigh carefully, mindful of constitutional protections and statutory safeguards. Those safeguards, however, are to be applied practically so that the best interests of the child — the polar star in controversies over child neglect and custody — are the paramount concern. The decision of the Court of Appeals is therefore reversed thereby reinstating the trial court’s orders.
REVERSED.