NO. COA13-502-2

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

IN THE MATTER OF:                    Chatham County
    D.C.                             Nos. 10 JA 46
                                           10 JT 46


Appeal by respondent from orders entered 18 April 2012 and 24 January 2013 by Judge Beverly Scarlett in District Court, Chatham County. By opinion entered 15 October 2013, this Court reversed and remanded the trial court's orders. By order entered on or about 11 June 2014, the North Carolina Supreme Court remanded to this Court.

> *Holcomb & Cabe, LLP, by Carol J. Holcomb and Samantha H. Cabe, for appellee Chatham County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for guardian ad litem.*
>
> *J. Thomas Diepenbrock, for appellant-respondent-mother.*


STROUD, Judge.


This case comes to us by order of the North Carolina Supreme Court remanding this case to us for reconsideration in light of *In re L.M.T.*, ___ N.C. ___, 752 S.E.2d 453 (2013). For the following reasons, we affirm.

I.    Background

We recite the background and applicable law from our prior opinion:

On 15 March 2011, the Chatham County Department of Social Services ("DSS") filed a juvenile petition alleging that Derrick[1] was a neglected and dependent juvenile, and on 1 June 2011, the trial court adjudicated Derrick a neglected juvenile. On 18 April 2012, the trial court changed Derrick's permanent plan to adoption and ordered that "[a] Termination of Parental Rights Motion shall be filed" ["Permanency Planning Order"]. Respondent filed notice preserving her right to appeal the 18 April 2012 order. On 24 January 2013, the trial court terminated respondent-mother's parental rights due to neglect, failure to make reasonable progress, and failure to pay a reasonable portion of support ["TPR Order."]. Respondent appealed the 24 January 2013 order.

On appeal, respondent contends that the trial court erred in its 18 April 2012 permanency planning order by ceasing reunification efforts without entering the necessary findings of fact required by North Carolina General Statute § 7B-507(b)(1). DSS argues that the trial court never ordered the cessation of reunification efforts and, therefore, was not required to make findings under North Carolina General Statute § 7B-507(b). . . . Moreover, the trial court here changed the permanent plan to adoption, and respondent-mother properly preserved her right to appeal the cessation of reunification efforts pursuant to N.C. Gen. Stat. § 7B-507(c). This Court determined in *In re A.P.W.* that an order which directs the filing of a petition to

---

[1] A pseudonym will be used to protect the identity of the child involved.

terminate parental rights and changes the permanent plan to adoption has implicitly ordered the cessation of reunification efforts. ___ N.C. App. ___, ___, 741 S.E.2d 388, 391 ("As in *J.N.S.*, the trial court in the instant case directed DSS to file a petition to terminate parental rights. Moreover, the trial court here changed the permanent plan to adoption, and respondent-mother properly preserved her right to appeal the cessation of reunification efforts pursuant to N.C. Gen. Stat. § 7B-507(c). Based on the foregoing, we hold that the trial court's 21 June 2011 order implicitly ceased reunification efforts, and we reject DSS's argument for dismissal."), *disc. review denied*, ___ N.C. ___, ___ S.E.2d ___ (2013).

*In re D.C.*, ___ N.C. App. ___, 752 S.E.2d 257 (No. COA13-502) (Oct. 15, 2013) (unpublished) (heading omitted).

II. Permanency Planning Order

Respondent argues that "the trial court erred when it entered a permanency planning review order changing the permanent plan to adoption because the order effectively ceased reunification efforts without including the findings of fact required by statute[.]" (Original in all caps.)

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App.

207, 213, 644 S.E.2d 588, 594 (2007).

> North Carolina General Statute § 7B-507(b) provides:
>> In any order placing a juvenile in the custody or placement responsibility of a county department of social services, . . . the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]
>
> N.C. Gen. Stat. § 7B-507(b)(1) (2011).

*In re D.C.*, ___ N.C. App. ___, 752 S.E.2d 257 (No. COA13-502) (Oct. 15, 2013) (unpublished).

The Supreme Court has directed that our reconsideration be directed by the requirements of *L.M.T.*, which states that

> [s]trict adherence to this statute [North Carolina General Statute § 7B-507(b),] ensures that the trial court fulfills the aspirations of the Juvenile Code by allowing our appellate courts to conduct a thorough review of the order. While trial courts are advised that use of the actual statutory language would be the best practice, the statute does not demand a verbatim recitation of its language as was required by the Court of Appeals in this case. Put differently, the order must make clear that the trial court considered the evidence in

> light of whether reunification "would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." The trial court's written findings must address the statute's concerns, but need not quote its exact language. On the other hand, use of the precise statutory language will not remedy a lack of supporting evidence for the trial court's order.

___ N.C. ___, ___, 752 S.E.2d 453, 455 (2013). The Supreme Court further clarified that the order ceasing reunification should be considered together with the termination of parental rights order in cases such as this; in other words, either order standing alone or the orders as read together can be enough to satisfy the language of North Carolina General Statute § 7B-507(b). *Id.* at ___, 752 S.E.2d at 456-57.

The guardian ad litem brief to this Court acknowledged that the Permanency Planning Order was deficient because of its failure to make the findings of fact as required by North Carolina General Statute § 7B-507(b). In our prior opinion, we agreed and reversed and remanded "to the trial court for further proceedings." *In re D.C.*, ___ N.C. App. ___, 752 S.E.2d 257 (No. COA13-502) (Oct. 15, 2013) (unpublished) (citation and quotation marks omitted). Now that we reconsider the Permanency Planning Order in light of our Supreme Court's directives in

*L.M.T.*, the Permanency Planning Order standing alone remains deficient, but we must reconsider it in conjunction with the TPR Order.

The 18 April 2012 Permanency Planning Order that ceased reunification made general findings regarding respondent's lack of complete compliance with her drug treatment program. The trial court also made numerous positive findings of fact regarding respondent's completion of parent-child therapy, her strong bond with Derrick, her attendance of her individual therapy sessions including progress with her goals, her enrollment in college, her maintenance of weekly visits and regular phone calls with Derrick wherein her interactions were "positive and appropriate[,]" and her claimed attendance to substance abuse treatment. In this regard, as far as we can tell from the trial court's orders, this situation was different from that presented by *L.M.T.*, in which even the permanency planning order alone showed that the respondent continued to have a drug problem that had worsened over time, lived in an environment involving serious domestic violence, and had also received an eviction notice from her current home. *Id.* at ___, 752 S.E.2d at 455-56. The trial court found in the "cease reunification order" in *L.M.T.* that

the Respondent Mother was sinking deeper and deeper into an abyss of domestic violence and drug abuse all the while covering it up and refusing to acknowledge the fact of its existence in order that the Court, the Department, the Guardian ad Litem and others surrounding her could assist her and help the juveniles. The deception of the Court during this process is bad enough, but the Respondent Mother has completely let her children down.

*Id.* at ___, 752 S.E.2d at 455-56 (emphasis added).

In *L.M.T.*, the Supreme Court determined that the "cease reunification order" alone was sufficient to satisfy the requirements of North Carolina General Statute § 7B-507(b), but went on to address the termination of parental rights order as well. *Id.* at ___, 752 S.E.2d at 455-58. Specifically, the Supreme Court stated:

> *Even if the cease reunification order standing alone had been insufficient, that would not end the appellate court's inquiry.* Parents may seek appellate review of cease reunification orders only in limited circumstances. In this case, respondent appealed under subsection 7B-1001(a)(5)(a), which provides that
>
> > a. The Court of Appeals shall review [an] order [entered under section 7B-507] to cease reunification together with an appeal of the termination of parental rights order if all of the following apply:
> >
> > > 1. A motion or petition to terminate the parent's rights

is heard and granted.

2.   The order terminating parental rights is appealed in a proper and timely manner.

3.   The order to cease reunification is identified as an issue in the record on appeal of the termination of parental rights.

*Id.* § 7B-1001(a)(5) (2011). In other words, if a termination of parental rights order is entered, the appeal of the cease reunification order is combined with the appeal of the termination order.

*Id.* at ___, 752 S.E.2d at 456.

As noted above, the Permanency Planning Order is insufficient, standing alone, to satisfy the requirements of North Carolina General Statute § 7B-507(b)(1). Accordingly, as directed by *L.M.T.*, we turn to the TPR Order to see if the findings of fact in that order in conjunction with the Permanency Planning Order which ordered a permanent plan of adoption would satisfy the requirements of North Carolina General Statute § 7B-507(b)(1). *See id.* at ___ 752 S.E.2d at 456-57. In the TPR Order, the trial court made additional detailed findings of fact regarding respondent's drug abuse and failures of treatment, going back to February of 2010 and continuing up to the time of the hearing on termination of parental rights. It is apparent, reading the Permanency Planning

Order and TPR Order together, that respondent continued in her pattern of attempts at recovery from her substance abuse problems and relapsing into abuse. Respondent does not challenge the sufficiency of the evidence to support the findings of fact in either order. Based upon all of the findings, considering the two orders together, "the order[s] embrace[] the substance of the statutory provisions requiring findings of fact that further reunification efforts would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." *Id.* at ___, 752 S.E.2d at 456-57 (citation and quotation marks omitted).

In addition, we note that the Permanency Planning Order did not order DSS to cease its reunification efforts with respondent, despite changing the permanent plan to adoption; thus, respondent had the benefit of continued access to the services and assistance of DSS in attempting to correct the conditions which led to the child's removal even though the permanent plan had been changed to adoption. In this situation, the deficiencies of the Permanency Planning Order did not impair respondent's ability to improve her situation prior to the hearing on termination of parental rights. As such, this

argument is overruled.

### III. TPR Order

Respondent also contends that the trial court "abused its discretion by concluding that the best interest of the minor child would be served by termination of the respondent-mother's parental rights." (Original in all caps.) Respondent does not challenge the grounds for termination but solely whether the trial court properly considered whether termination of her parental rights was in Derrick's best interests. We review the trial court's determination of what is in the best interests of the child for abuse of discretion. *Id.* at ___, 752 S.E.2d at 457.

North Carolina General Statute § 7B-1110(a) provides,

> After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment

> of the permanent plan for the juvenile.
> (4) The bond between the juvenile and the parent.
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2013). Defendant contends that the trial court failed to properly consider and make findings of fact regarding factors 3, 4, and 5 in North Carolina General Statute § 7B-1110(a).

As to "[w]hether the termination of parental rights will aid in the accomplishment of the permanent plan[,]" *id.*, for Derrick the trial court found:

> b. Termination of Respondent's parental rights is necessary to implement the permanent plan of adoption.
>
> c. Termination of Parental Rights is the only barrier to the adoption of the child.

As to "[t]he bond between the juvenile and the parent[,]" while the trial court may not have used the exact word "bond" it did find that Derrick "is approximately five and one-half (5 ½) years old and has been in foster care for over two years[,]" indicating that Derrick could not have had a strong bond with respondent as he would barely, if at all, have remembered her as

his primary guardian. The trial court further found that Derrick "was happy to see his siblings and Mr. Johnson[, prospective adoptive father,] and did not want to leave when the visit ended" indicating that Derrick's primary bond is with the prospective adoptive family and not respondent. As to "[t]he quality of the relationship between the juvenile and the proposed adoptive parent[,]" *id.*, the trial court found that the prospective adoptive parents "are willing to adopt [Derrick] and have him as a part of their large and loving family." As the trial court considered the appropriate factors, we conclude that the trial court did not abuse its discretion in determining termination of respondent's parental rights was in Derrick's best interests. This argument is overruled.

## IV. Conclusion

For the foregoing reasons, we affirm both the Permanency Planning Order and the TPR Order.

AFFIRMED.

Judges MCGEE and BRYANT concur.