BERGER, Judge.
Respondent-mother and Respondent-father (collectively, "Respondents") appeal from a permanency planning order awarding guardianship or adoption of their minor children, N.T. ("Nancy"), R.T. ("Rowena"), A.T. ("Ann"), E.T. ("Elly"), H.T. ("Hilary"), D.T. ("Dan"), T.T. ("Tom"), and G.T. ("Gary")[1] (collectively, "the children" or "the juveniles"), to a relative or court-approved caretaker. Respondents' ninth child, M.T., reached the age of majority prior to the filing of this appeal. We affirm in part and remand in part.
Factual and Procedural Background
On September 15, 2015, Martin County Department of Social Services ("MCDSS") received a report about suspected neglect of the children. The allegations included that Respondents had placed the juveniles with another family because of an infestation of fleas and roaches in their home and that the home was not suitable to live in; that Respondents allowed the juveniles' Medicaid to lapse and had been unable to obtain the juveniles' medicine; that Respondent-mother had not been home-schooling the juveniles and some of them were so far behind that they could not read; and that the Respondent-mother had been inappropriately disciplining the children.
On October 22, 2015, MCDSS filed juvenile petitions indicating that the children were neglected, and nonsecure custody orders were entered. On May 31, 2016, all eight children were adjudicated neglected. An Initial Disposition Order was entered July 11, 2016, which set the permanent plan for reunification with Respondent-parents. In its first review order entered October 17, 2016, the trial court made several conclusions, including maintaining reunification as the permanent plan and granting Respondents supervised visitation with most of the children. A subsequent review order was entered December 13, 2016, in which the trial court ordered MCDSS to continue making reasonable efforts to eliminate the need for placement with MCDSS, and implemented a detailed plan in furtherance of the goal of reunification.
On August 29 and September 22, 2017, the matter came before the trial court for a review hearing. On October 24, 2017, the trial court entered a Review Order (the "Review Order") ceasing reunification efforts and removing reunification as a permanent plan for all eight minor children. On May 1, 2018, Respondents filed and served their notice of appeal from the Review Order.[2]
Subsequent permanency planning hearings were held on March 27, May 1, and May 29, 2018. The trial court then entered a permanency planning order ("Permanency Planning Order") on June 26, 2018, in which the trial court appointed guardians for the children: Karen and Brooks Braswell (the "Braswells") were appointed guardians for Ann, Rowena, and Nancy; Ruth and Ray Barber (the "Barbers") were appointed guardians for Hilary and Elly; and their maternal grandmother Deborah Nirdlinger ("Ms. Nirdlinger") was appointed guardian for Gary, Tom, and Dan. In the Permanency Planning Order, the trial court made the following relevant findings supporting their placements with guardians and not with Respondents:
51. The situation of each of the respondent-parents is much the same as when the Court first held a permanency planning hearing last fall. The respondent-father injured his shoulder and has been out of work.
53. Neither of the respondent-parents presented any evidence at any of the three days of court that either of them have engaged in further mental health therapy or counseling since November 7, 2017. This is contrary to the intensive therapy recommended by Dr. Amy James and other psychological professionals for each parent's serious mental health conditions.
54. The respondent-parents' mental health conditions that existed at the time of the initial permanency planning hearing persist to this day. The parents continue to display a lack of ownership of the problems that existed in their household at the time of the removal of the juveniles. They continue to exhibit
an unwillingness to receive necessary mental health therapy or to change their behaviors. They continue to show a lack of understating of the abuse and serious neglect suffered by their children.
56. Since the case began, and despite the parents' involvement in therapy, at no time have any of the juveniles' therapists recommended an expansion of the parents' visitation, or recommended unsupervised visitation. This is indicative of the parents' lack of meaningful progress in the case. The parents did get extra holiday time, however.
57. The respondent-parents both love the juveniles. But, the Court finds that it is equally evident that the respondent-parents are not able to properly take care of the juveniles.
58. The respondent-parents have presented no compelling reason for this Court to resume reunification efforts.
Respondents filed and served their notice of appeal from the Permanency Planning Order in July 2018. On appeal, Respondents argue that the trial court erred when it: (1) applied a repealed statute and did not make findings adequately addressing all of the criteria to enter a permanency planning order; (2) did not verify whether the appointed guardians or caretakers had adequate resources or understood the legal significance of his or her appointment; (3) did not make the required findings for juveniles fourteen years or older as to Gary and Tom; and (4) did not make required findings based on clear and convincing evidence before it waived further review hearings as to Hilary, Elly, Rowena, and Nancy.
Respondent-father further contends that the trial court's findings and evidence did not support the trial court's conclusion that it was not possible for any of the children to return home and that efforts at reunification clearly would be unsuccessful or inconsistent with the children's health and safety. However, we dismiss this argument as it has been addressed in a separate appeal.
Analysis
"[Appellate] review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal." In re P.O. , 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citations omitted). Unchallenged findings of fact are deemed supported by the evidence and binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
"In choosing an appropriate permanent plan under N.C. Gen. Stat. § 7B-906.1..., the juvenile's best interest is paramount. We review a trial court's assessment of a juvenile's best interest for abuse of discretion." In re J.H. , 244 N.C. App. 255, 269, 780 S.E.2d 228, 238 (2015) (citations and quotation marks omitted).
I. Permanency Planning Hearing
Respondents argue that the trial court applied a repealed statute and did not make findings adequately addressing all of the criteria in N.C. Gen. Stat. § 7B-906.2(d). They specifically contend that Section 7B-906.2(d)(2) and (4) were not properly addressed. We disagree.
At any permanency planning hearing,
the court shall make written findings as to each of the following, which shall demonstrate lack of success:
(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
N.C. Gen. Stat. § 7B-906.2(d) (2018). The trial court's findings of fact need "not quote the precise language" stated in the applicable statutes as long as the trial court's written findings "embrace[ ] the substance of the statutory provisions." In re L.M.T. , 367 N.C. 165, 169, 752 S.E.2d 453, 456 (2013).
In the present case, the trial court did cite to a repealed statute. However, its findings sufficiently address Section 7B-906.2(d)(2) and (4). In support of whether Respondents are "actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile," the trial court made the following relevant findings:
53. Neither of the respondent-parents presented any evidence at any of the three days of court that either of them have engaged in further mental health therapy or counseling since November 7, 2017. This is contrary to the intensive therapy recommended by Dr. Amy James and other psychological professional for each parent's serious mental health conditions.
54. The respondent-parents' mental health conditions that existed at the time of the initial permanency planning hearing persist to this day. The parents continue to display a lack of ownership of the problems that existed in their household at the time of the removal of the juveniles. They continue to exhibit an unwillingness to receive necessary mental health therapy or to change their behaviors. They continue to show a lack of understating of the abuse and serious neglect suffered by their children.
56. Since the case began, and despite the parents' involvement in therapy, at no time have any of the juveniles' therapists recommended an expansion of the parents' visitation, or recommended unsupervised visitation. This is indicative of the parents' lack of meaningful progress in the case. The parents did get extra holiday time, however.
These findings directly address whether Respondents were actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile in accordance with Section 7B-906.2(d)(2). Although the trial court cited a repealed statute, its written findings "embrace[ ] the substance of the statutory provisions." In re L.M.T. , 367 N.C. at 169, 752 S.E.2d at 456.
In support of whether Respondents were "acting in a manner inconsistent with the health or safety of the juvenile" under Section 7B-906.2(d)(4), the trial court made the following findings:
67. The respondent-parents have not made any more progress in achieving the goals set forth in prior court orders as they had at the initial permanency planning hearing. ...
69. Given the lack of progress made by the respondent-parents and their psychological issues as detailed above, efforts to reunite the juveniles with either respondent-parent clearly would be unsuccessful and futile, and would be inconsistent with the juveniles' health, safety and need for a safe, permanent home within a reasonable period of time.
70. The respondent-parents continue to be unable to care for these juveniles, and that inability will continue into the foreseeable future. It is not appropriate for any of these juveniles to return to the respondent-parents' care.
These findings support the trial court's conclusion that Respondents were "acting in a manner inconsistent with the health or safety of the juvenile" under Section 7B-906.2(d)(4). Even though the trial court cited the incorrect statute, the trial court's findings adequately address the substance of Section 7B-906.2(d)(4).
Because the trial court made sufficient findings that adequately embrace the substance of Section 7B-906.2(d)(2) and (4), we affirm the trial court's Permanency Planning Order.
Respondent-father also argues that "because the trial court did not make the required findings of fact, the court's factual findings were insufficient to support an ultimate conclusion that it was in the best interest of each child to be placed in the guardianship of his or her caretaker." However, as discussed above, we find that the trial court's findings embraced the statutorily required findings; thus, the trial court did not abuse its discretion. This conclusion is supported by the findings stated above, and the remaining unchallenged findings in the Permanency Planning Order. Therefore, we affirm the Permanency Planning Order.
II. Guardian Verification
Respondents argue that the Permanency Planning Order should be vacated and remanded because the trial court did not adequately address Section 7B-906.1(j). They specifically contend that the evidence is insufficient to support that the guardians understood the legal significance of guardianship or that they possessed the financial means to assume guardianship. We disagree.
If the court determines that the juvenile shall be placed in the custody of an individual other than a parent or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile.
N.C. Gen. Stat. § 7B-906.1(j) (2017). The "trial court need not make detailed findings of evidentiary facts or extensive findings regarding the guardian's situation and resources, nor does the law require any specific form of investigation of the potential guardian. ... But the statute does require the trial court to make a determination that the guardian has 'adequate resources' and some evidence of the guardian's 'resources' is necessary as a practical matter, since the trial court cannot make any determination of adequacy without evidence." In re P.A. , 241 N.C. App. 53, 61-62, 772 S.E.2d 240, 246 (2015) (citation omitted). "The court may consider any evidence, including hearsay evidence ... or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-906.1(c).
In Finding #18, with regard to the adequacy of the Braswells' resources and their understanding of being guardians of Nancy, Rowena, and Ann, the trial court stated that the "Braswells understand the duties of serving as guardians; they are capable of serving as guardians; and they have the financial means with which to support the juveniles." The Braswells did not testify at the hearing and their letter submitted to the court in support of guardianship was never admitted into evidence. However, the trial court relied on social worker Gwendolyn Goddard's ("Ms. Goddard") testimony. Based on prior conversations between Ms. Goddard and the Braswells, Ms. Goddard testified that the Braswells had the financial wherewithal to become guardians, and understood the responsibilities associated therewith. Because "our standard of review merely asks if there was competent evidence, even hearsay evidence, at trial to support the trial court's findings," Matter of N.H. , --- N.C. App. ----, ----, 804 S.E.2d 841, 845 (2017), we find that the trial court's reliance on Ms. Goddard's sworn testimony regarding the Braswells' ability to provide adequate care for Nancy, Rowena, and Ann was sufficient.
In Finding #32, with regard to the adequacy of the Barbers' resources and their understanding of being guardians of Hilary and Elly, the trial court stated that the "Barbers understand the duties of serving as guardians; they are capable of serving as guardians; and they have the financial means with which to support the juveniles." In support of this finding, the trial court relied on Ms. Barber's testimony where she affirmed her understanding of what it takes to be a guardian, she discussed with MCDSS the responsibilities of being a guardian, and agreed that she had the financial wherewithal to take care of the children. She further testified that she and her husband have not experienced any financial difficulties having the children in their home. She further noted that even if the financial assistance they were receiving from MCDSS was to stop, they would still be able to serve as guardians for the children. In addition, Ms. Goddard testified that she had spoken with the Barbers about the responsibilities of being the children's guardians, and that they understood those responsibilities. Thus, we find that there was sufficient evidence for the trial court to determine the adequacy of the resources and understanding for the Barbers to serve as guardians.
In Finding #39 with regard to the adequacy of Ms. Nirdlinger's resources and her understanding of being the guardian of Gary, Tom, and Dan, the trial court stated she "understands the duties of serving as guardian; she is capable of serving as guardian; and she has the financial means with which to support the juveniles." In support of this finding, the trial court relied on Ms. Nirdlinger's testimony. She testified that she understands she would need to make major life decisions on behalf of the children, and that she had the financial wherewithal to be a guardian. When asked about needing assistance to pay for any medical bills, she testified that it "would be very helpful," not that she needed it. Also, at the hearing she admitted that MCDSS's child support helps a lot, but she currently did not have any concerns about her financial ability to serve as the guardian of the boys. In addition, Ms. Goddard testified that she had spoken with Ms. Nirdlinger about the responsibilities of being the children's guardian, that she understood those responsibilities, and that Ms. Nirdlinger had the financial wherewithal to support the children. The trial court relied on sufficient evidence when it determined the adequacy of Ms. Nirdlinger serving as guardian.
Accordingly, we find that the trial court relied on competent evidence when appointing the children's guardians and adequately addressed Section 7B-906.1(j). Therefore, we affirm the Permanency Planning Order.
III. Juveniles Fourteen Years of Age and Older
Respondents contend that the Permanency Planning Order should be vacated and remanded because the trial court did not make the required findings in accordance with Section 7B-912(a) as to Gary and Tom, who were at least fourteen years old at the time of the hearing. We remand for additional findings addressing the issues required by the statute.
At every permanency planning hearing, the trial court is required to make additional written findings for a juvenile who has attained the age of fourteen years:
(1) The services provided to assist the juvenile in making a transition to adulthood.
(2) The steps the county department of social services is taking to ensure that the foster family or other licensed placement provider follows the reasonable and prudent parent standard as provided in G.S. 131D-10.2A.
(3) Whether the juvenile has regular opportunities to engage in age-appropriate or developmentally appropriate activities.
N.C. Gen. Stat. § 7B-912(a) (2017). The reasonable and prudent parent standard is
the standard characterized by careful and sensible parental decisions that are reasonably intended to maintain the health, safety, and best interests of the child while at the same time encouraging the emotional and developmental growth of the child that a caregiver shall use when determining whether to allow a child in foster care under the responsibility of the State to participate in extracurricular, enrichment, cultural, and social activities.
N.C. Gen. Stat. § 131D-10.2A(a) (2017).
Here, the trial court made the following findings regarding Gary and Tom:
36. ... [Tom] has had some issues at school that have been appropriately addressed at school and in therapy.
37. ... [Tom and Gary's therapist] notes that the boys have made tremendous progress in therapy. She recommends that they remain placed with Ms. Nirdlinger and that they continue in therapy somewhere closer to where they live. Ms. Nirdlinger has already identified a therapist in her area.
44. ... [E]ach of the three boys [should] remain in regular mental health counseling.
49. The school-aged juveniles were being home schooled by respondent-mother when this case began and these juveniles were behind academically. The juveniles have worked in their respective public schools to get caught up, and ... that he or she [should] remain in regular school.
Although the trial court made some findings, it did not adequately address the required findings in Section 7B-912(a). However, the Permanency Planning Order need not be vacated because the record contains sufficient evidence from which the trial court could make additional findings under the statute. Accordingly, we remand to the trial court to make the required findings.
IV. Waiving Further Review Hearings
Respondents argue that the Permanency Planning Order should be vacated and remanded because the trial court did not directly address the criteria in Section 7B-906.1(n)(3) and (4). Respondents specifically contend that the trial court did not state the standard of proof it applied and the record did not clarify what standard of proof had been used to cease further reviews of Hilary, Elly, Rowena, and Nancy.
The trial court may waive the holding of hearings only
if the court finds by clear, cogent, and convincing evidence each of the following
(1) The juvenile has resided in the placement for a period of at least one year.
(2) The placement is stable and continuation of the placement is in the juvenile's best interests.
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
(5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.
N.C. Gen. Stat. § 7B-906.1(n) (2018).
In the present case, we agree with Respondents that the trial court did adequately address subsections one, two, and five, but did not adequately address subsections three and four of Section 7B-906.1(n). However, we need not vacate the Permanency Planning Order, but instead remand for the trial court to make written findings of fact addressing subsections three and four of Section 7B-906.1(n). See Matter of K.L. , --- N.C. App. ----, ----, 802 S.E.2d 588, 598 (2017) (remanding solely for the trial court to enter necessary findings according to Section 7B-906.1(n) before waiving further review hearings).
Conclusion
For the reasons stated above, we affirm in part and remand in part for the trial court to make additional findings consistent with this opinion.
AFFIRMED IN PART; REMANDED IN PART.
Report per Rule 30(e).
Judges MCGEE and MURPHY concur.

Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.

The appeal is pending under docket number COA18-849.