IN THE SUPREME COURT OF NORTH CAROLINA

No. 409A19

Filed 25 September 2020

IN THE MATTER OF: S.J.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 24 July 2019 by Judge Andrea F. Dray in District Court, Buncombe County. This matter was calendared for argument in the Supreme Court on 29 July 2020 but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Hanna Frost Honeycutt for petitioner-appellee Buncombe County Department of Health and Human Services.*
>
> *Jackson M. Pitts for Guardian ad Litem.*
>
> *David A. Perez for respondent-appellant mother.*

BEASLEY, Chief Justice.

Respondent, the mother of S.J.B. (Susan)[1], appeals from the trial court's 24 July 2019 order terminating her parental rights. The issue before the Court is whether the trial court abused its discretion in finding and concluding that it was in Susan's best interest to terminate respondent's parental rights. We hold the trial court did not abuse its discretion and affirm the trial court's order.

---

[1] Pseudonyms are used throughout the opinion for ease of reading and to protect the juvenile's identity.

On 24 October 2017, the Buncombe County Department of Social Services (DSS) received a child protective services report alleging neglect. After a two-month investigation, DSS filed a petition alleging Susan was a neglected and dependent juvenile. DSS alleged respondent: (1) was suffering from untreated mental health conditions that kept her from being able to get out of bed; (2) was resistant to receiving treatment for her mental health issues; (3) refused a higher level of mental health treatment for Susan's half-brother, Eric, because she did not want people coming into her home; (4) took Eric off of his prescribed mental health medication, which led to behavioral issues at school; (5) neglected Eric's dental needs; (6) had a history of substance abuse; (7) was on probation for driving while impaired; (8) refused to work with DSS to create a full case plan; (9) refused to submit to hair follicle tests for illicit substances; (10) refused to allow Eric and Susan to submit to a hair follicle test to determine if they had been exposed to illegal substances; (11) failed to submit to a Comprehensive Clinical Assessment (CCA); (12) was impaired during an unannounced home visit; (13) had illicit drugs and drug paraphernalia in her home; and (14) had been arrested and charged with felony possession of heroin, possession of a Schedule IV controlled substance, possession of drug paraphernalia, and child abuse.

DSS obtained non-secure custody of Susan and Eric and placed them in foster care, but Eric was ultimately returned to his father's custody.[2] Respondent's mother was approved as a placement for Susan on 20 February 2018. In early March 2018, DSS received reports alleging drug use by Susan's grandmother while Susan was residing in the home. On 13 March 2018 Susan's grandmother admitted that, if tested at that time, she would test positive for multiple illicit substances, and multiple people had smoked crack cocaine in the home while Susan was asleep in her bedroom. Based on these statements, DSS removed Susan from her grandmother's home and placed her with her original foster parents.

After a hearing on 4 April 2018, the trial court entered an order on 10 May 2018 adjudicating Susan to be a neglected and dependent juvenile. The court continued custody of Susan with DSS and granted respondent supervised visitation with Susan for one hour each week. The court also ordered respondent to, in part: (1) complete a CCA and follow all recommendations; (2) engage in medication management; (3) complete random drug screens within twenty-four hours of request; (4) engage in a parenting program and exhibit appropriate discipline and parenting during visits with Susan; (5) obtain stable housing; (6) address pending criminal charges and accumulate no additional charges; and (7) complete "SOAR Court" intake and engage in treatment if deemed appropriate.

---

[2] Susan and Eric have different biological fathers. The identity of Susan's father is unknown.

After a 5 June 2018 hearing, the trial court entered an initial permanency planning and review order on 23 July 2018. The court found respondent had not made any efforts to complete a CCA or to address her mental health needs. She had submitted to an initial hair follicle drug screen but did not complete her last requested drug screen and had not engaged in any programs to assist her in her sobriety. Respondent still had pending criminal charges, had not been cooperative with DSS, and was homeless and unwilling to utilize shelters. The court continued custody of Susan with DSS and set Susan's primary permanent plan as reunification, with a secondary permanent plan of adoption.

The trial court conducted a subsequent permanency planning and review hearing on 28 September 2018 and entered its order from that hearing on 24 October 2018. The court found respondent completed a CCA on 17 July 2018 but had not followed through with most of the recommendations from the assessment. She continued to refuse to complete requested drug screens and did not report substance abuse as an issue when she completed her CCA. Respondent was consistent with attending visitations but struggled with exhibiting appropriate behavior during them. She had been living with Susan's grandmother and had obtained a job. The court continued Susan's primary and secondary permanent plans as reunification and adoption and ordered DSS to complete any steps necessary to finalize the plans.

A third permanency planning and review hearing was set for 9 January 2019, but in early January 2019, respondent overdosed on Fentanyl and entered an

inpatient treatment detox and rehabilitation program after she was released from the hospital. The trial court continued the hearing until February by order entered 10 January 2019 because respondent was in inpatient treatment. Respondent, however, failed to complete the program and was discharged. In its order from the continued hearing, the trial court set the primary permanent plan for Susan as adoption and the secondary permanent plan as reunification.

Subsequently, DSS filed a petition to terminate parental rights on 28 January 2019, alleging grounds as to respondent of neglect, willful failure to correct the conditions that led to Susan's removal from her home, and failure to pay a reasonable portion of the cost of Susan's care while Susan was in DSS custody. *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2019). After a hearing on 12 July 2019, the trial court entered an order terminating respondent's parental rights on 24 July 2019.[3] The court concluded all three grounds alleged by DSS existed to terminate respondent's parental rights and that termination of her parental rights was in Susan's best interests. Respondent appealed the trial court's order terminating her parental rights, arguing that the trial court abused its discretion in concluding that terminating respondent's rights was in Susan's best interest. We disagree.

Termination of parental rights proceedings consist of two stages: adjudication and disposition. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101,

---

[3] The order also terminated the parental rights of Susan's unknown father.

110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner must prove by "clear, cogent, and convincing evidence" that one or more grounds for termination exist under section 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(e), (f) (2019). If the petitioner proves at least one ground for termination during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110)). In making the best interest determination,

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110. "We review this decision on an abuse of discretion standard[.]" *In re L.M.T.*, 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013). "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary

that it could not have been the result of a reasoned decision.' " *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

The trial court made the following findings of fact addressing each of the factors in section 7B-1110(a):

> 2. The minor child is five years old.
>
> 3. The minor child has been placed in her current foster home since June 1, 2018.
>
> 4. The minor child is strongly bonded with [her] foster parents and identifies them as her parents. The relationship is stable, predictable and loving.
>
> 5. The minor child is strongly bonded with the other children in the home.
>
> 6. The minor child has a half sibling in Florida. The foster parents have made two trips with the minor child to visit her half sibling and facilitate weekly face time communication.
>
> 7. The foster parents have a strong relationship with the maternal grandmother. They have invited her to extracurricular events for the minor child.
>
> 8. The foster parents have expressed their desire to adopt the minor child.
>
> 9. The minor child has an inconsistent and diminishing bond with the respondent mother. The minor child has expressed worries about returning to the care of respondent mother.
>
> . . .

11. The maternal grandmother previously had placement of the minor child, but the minor child was removed from the maternal grandmother's home after another member of the maternal grandmother's household was abusing drugs. The [c]ourt in the underlying juvenile case has not reconsidered placement in the maternal grandmother's household. The maternal grandmother has not attended court previous to this hearing to request placement.

12. The likelihood of adoption is high.

13. The minor child's permanent plan is adoption and, therefore, the parental rights of the respondent mother . . . must be terminated in order to accomplish that plan.

14. The only barrier to adoption is termination of parental rights.

Respondent does not challenge these findings, and they are thus binding on appeal. *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 54 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (holding that unchallenged findings of fact made at the adjudicatory stage are binding on appeal)).

Instead, respondent argues that the trial court did not make several findings of fact regarding evidence at the hearing she believes the court should have considered in determining Susan's best interests. She contends the court should have made findings regarding: (1) her future plan to enter a residential twelve-month drug rehabilitation program; (2) the potential for Susan to reside with her after she completed three to six months of the rehabilitation program; (3) Susan's relationship with her half-brother, Eric, and whether that relationship would continue if she were adopted; and (4) Susan's bond with her maternal grandmother and her potential

placement with her grandmother. She further argues the trial court's lack of dispositional findings regarding these circumstances show that it failed to properly weigh the competing goals of preserving Susan's ties to her biological family and achieving permanence for Susan through severing those ties in favor of adoption. *See In re A.U.D.*, 373 N.C. 3, 11–12, 832 S.E.2d 698, 703–04 (2019). These arguments are misplaced.

Respondent does not identify any conflict in the evidence that would require the trial court to make specific findings addressing the factual basis for her arguments. We have held,

> [a]lthough the trial court must consider all of the factors in N.C.G.S. § 7B-1110(a), it "is only required to make written findings regarding those factors that are relevant." "A factor is relevant if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the district court."

*In re C.J.C.*, 374 N.C. 42, 48, 839 S.E.2d 742, 747 (2020) (quoting *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019)); *see also In re S.D.C.*, 373 N.C. 285, 290, 837 S.E.2d 854, 858 (2020) (holding the same when considering any "relevant consideration" pursuant to N.C.G.S. § 7B-1110(a)(6)).

Respondent testified she had "looked into" attending a year-long drug rehabilitation program that may have allowed Susan to live with her after three to six months of participation in the program. Respondent's mere intention to participate in a drug rehabilitation program, however, had very limited relevance to

Susan's best interests, particularly given that respondent's rights were terminated, in part, because of respondent's history of relapse and failure to complete drug rehabilitation programs.

Respondent's argument that the trial court did not make findings regarding Susan's bond with her maternal grandmother and her potential placement with her grandmother is likewise without merit. It was uncontested that Susan had a bond with her grandmother, and her grandmother believed that bond to be strong. The grandmother also testified she was in a different emotional position than when Susan was removed from her care, was able to set boundaries, had cut ties with the sister whose cocaine use led to Susan's removal from her care, and was financially able to take care of Susan. Nevertheless, the trial court found that while the foster parents have a strong relationship with the grandmother, the grandmother had not previously appeared in court to request that Susan be placed with her.

Likewise, the trial court considered Susan's relationship with Eric. It was also uncontested that Susan had a bond with her half-brother. The court found that Susan's foster parents had taken two trips to Florida to allow Susan to spend time with Eric and continued weekly face time communication.

The trial court's unchallenged findings show it considered Susan's bond with Eric and her maternal grandmother and her maternal grandmother's potential as a possible placement option for Susan in making its best interest determination. Thus, while Susan's foster parents could potentially cease contact with Susan's

grandmother and half-brother after the adoption is complete, it is the province of the trial court to weigh the evidence before it and "this Court lacks the authority to reweigh the evidence that was before the trial court." *In re A.U.D.*, 373 N.C. at 12, 832 S.E.2d at 704. Thus, we hold the trial court made sufficient dispositional findings regarding Susan's bond with her maternal grandmother and half-brother in light of the evidence before it.

The trial court's dispositional findings show it considered the relevant statutory criteria of N.C.G.S. § 7B-1110(a) and that the court weighed the competing goals of preserving Susan's ties to her biological family and achieving permanence for Susan through adoption. This Court is satisfied with the trial court's conclusion that termination of respondent's rights was in Susan's best interest. Therefore, we affirm the trial court's order terminating her parental rights.

AFFIRMED.