IN THE SUPREME COURT OF NORTH CAROLINA

No. 159PA25

Filed 20 March 2026

IN THE MATTER OF: N.M.W. and A.N.D.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a divided decision of the Court of Appeals, 299 N.C. App. 20 (2025), vacating an order entered on 3 November 2023 and affirming in part and vacating in part an order entered on 30 May 2024 by Judge Andrew K. Wigmore in District Court, Carteret County, and remanding the case. Heard in the Supreme Court on 19 February 2026.

*Stephanie Sonzogni for petitioner-appellant Carteret County Department of Social Services; and Maya M. Engle and Stephen V. Carey for appellant Guardian ad Litem.*

*Jason Senges for respondent-appellee mother.*

PER CURIAM.

On petition of the guardian ad litem and the Carteret County Department of Social Services, we allowed discretionary review of the Court of Appeals' decision as to respondent-mother.[1] We reverse the decision of the Court of Appeals as it pertains to respondent-mother for the reasons stated in the concurring in part and dissenting in part opinion. We remind the Court of Appeals that it is bound to apply properly

---

[1] No party sought this Court's review of the Court of Appeals' decision as to respondent-father, and we therefore do not consider that portion of the Court of Appeals' opinion.

the precedent of this Court. Because the findings of fact in the permanency planning order were sufficient to satisfy the requirements of N.C.G.S. § 7B-906.2(d) under our precedent in *In re L.L.*, 386 N.C. 706, 909 S.E.2d 151 (2024), the concurrence in part and dissent in part's discussion of remand rather than vacatur as the proper remedy for insufficient findings was unnecessary.

REVERSED.

Justice BERGER concurring.

*In re Civil Penalty* solidified the principle of horizontal stare decisis for Court of Appeals decisions.[1]  *See In re Civil Penalty*, 324 N.C. 373, 384 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").  In a perfect world, this rule would provide consistency and stability in the law.

But we have seen a pattern of decisions from the Court of Appeals that conflict not only with prior Court of Appeals opinions but with clear precedent from this Court.  The per curiam opinion, with which I concur, reminds the Court of Appeals that it is bound to follow our decisions.  Such a declaration is so obvious that it need not be made.

But inattentiveness or recalcitrance by the Court of Appeals can have the practical effect of overruling this Court's precedent, and the Constitution does not give the Court of Appeals this authority.  *See* N.C. Const. art. IV, § 12; *see also Holmes v. Moore*, 384 N.C. 426, 437 (2023) ("[I]t is the duty of the Supreme Court of North Carolina alone to declare what the law is under our Constitution." (citing *Bayard v. Singleton*, 1 N.C. 5 (1787)).  Therefore, it may be time for us to revisit *In re Civil*

---

[1] Horizontal stare decisis refers to the idea that an intermediate court is bound by its own precedent.  Vertical stare decisis, by contrast, binds lower courts to the decisions of higher courts.

*Penalty* and consider whether decisions of the Court of Appeals should be persuasive authority unless that court sits en banc. *See* N.C. R. App. P. 31.1.

This case is a clear example of the problem. Our decisions in *In re L.L.*, 386 N.C. 706 (2024) and *In re L.R.L.B.*, 377 N.C. 311 (2021) provide straightforward holdings concerning the content of juvenile court orders: magic words are not required. *See In re L.L.*, 386 N.C. at 716 ("[T]he trial court's written findings need not track the statutory language verbatim . . . ."); *In re L.R.L.B.*, 377 N.C. at 320 (holding that a trial court's written findings "need not quote [the statute's] exact language" and that findings of fact in a termination order and permanency planning order may be considered together (quoting *In re L.M.T.*, 367 N.C. 165, 168 (2013)). These are not the only decisions in which we have made this declaration. In fact, in *In re L.L.*, we were forced to "reiterate this Court's previously articulated standard for written findings under the Juvenile Code." 386 N.C. at 716.

But even after this reminder, the panel below issued an opinion that is in obvious tension with not only binding precedent from this Court but plain English. Compounding the problem, the panel below decided to publish its opinion, and under *In re Civil Penalty*, it had the weight of precedent in our state until today. Thus, for more than a year, enterprising attorneys could have legitimately used the decision below to suggest the law was something other than that established by this Court, and application in our trial courts was potentially contrary to North Carolina law.

The brief filed by the guardian ad litem and the Carteret County Department

of Social Services highlighted the issue: "Statewide reliance on the Court of Appeals' published majority opinion would cause confusion and endanger the safety of vulnerable children across the state . . . ." In fact, when asked if unpublishing Court of Appeals decisions might alleviate confusion in the trial courts, counsel for DSS stated, "[T]hat would be the most helpful thing to do."

The practical shortcomings of *In re Civil Penalty* are obvious. A rule intended to provide stability instead does the opposite and in a way that undermines the constitutionally established judicial hierarchy in this state. The resolution of important issues of first impression is relegated to the luck of the three-judge-panel draw, and first-in-time decisions set a baseline from which future panels cannot deviate. These panels wield unequal influence by moving the law in a direction before it has had an opportunity to percolate. *See* Robert Edmunds, Jr., *In re Civil Penalty (Again)*, N.C. App. Prac. Blog (Jan. 22, 2019), https://ncapb.foxrothschild.com/2019/01/22/in-re-civil-penalty-again/.

Some may say that eliminating horizontal stare decisis for Court of Appeals decisions will lead to even greater confusion. But when Court of Appeals panels are in disagreement, there is a mechanism already in place to resolve panel splits: en banc review pursuant to Rule 31.1. When *In re Civil Penalty* was issued, the Court of Appeals did not have this procedure available. Now, Rule 31.1 provides a direct method for resolving panel splits efficiently, but *In re Civil Penalty* has not been updated. Declaring, by rule or otherwise, that Court of Appeals decisions are mere

persuasive authority unless issued en banc would allow multiple panels to contribute to the intermediate court's jurisprudence without prematurely binding the state to one interpretation of the law.

Judiciously applied, such a rule would not lead to unpredictability or confusion. Rather, panels and trial courts could grapple more directly with principles set forth in this Court's jurisprudence and would be encouraged to follow a Court of Appeals panel's reasoning when persuaded by its soundness. This would allow subsequent panels to make deliberative decisions rather than be handcuffed by every prior published opinion, well-reasoned or otherwise.

If we strive for coherence in the law, then we should promote a system in which legal reasoning develops and is tested over time. Giving precedential weight to the first-in-time panel deciding an issue, merely because it is first, prevents this development from occurring. Indeed, we have long stated that stare decisis attaches only "where a principle of law has become settled *by a series of decisions*." *State v. Ballance*, 229 N.C. 764, 767 (1949) (emphasis added); *see also Mial v. Ellington*, 134 N.C. 131, 158 (1903) ("It is going quite too far to say that a single decision of any court is absolutely conclusive as a precedent."); *Williamson v. Rabon*, 177 N.C. 303, 307 (1919) ("[A] single decision can seldom serve as a basis for stare decisis . . . ." (cleaned up)). Inconsistent with this bedrock principle of stare decisis, *In re Civil Penalty* enables the Court of Appeals to bind the state with a one-off decision, unless and until addressed by this Court.

Contrary to our constitutional structure, our current system allows the Court of Appeals to assume supremacy over this Court. Revisiting *In re Civil Penalty* has, therefore, become necessary, and the better course moving forward is to allow legal principles to develop in the lower courts and reserve binding authority for Court of Appeals decisions that are the product of en banc review.