IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-93

No. 418A20-1

Filed 27 August 2021

IN THE MATTER OF: A.P.W., A.J.W., H.K.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari pursuant to N.C.G.S. § 7A-32(b) from orders entered on 4 March 2019 by Judge David V. Byrd and on 30 June 2020 by Judge Jeanie R. Houston in District Court, Wilkes County. This matter was calendared in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for petitioner-appellee Wilkes County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo and Assistant Parent Defender J. Lee Gilliam for respondent-appellant father.*

*Anné C. Wright for respondent-appellant mother.*

BERGER, Justice.

Respondent-mother and respondent-father appeal from the trial court's orders terminating their parental rights in the minor children "Ava," born on January 16,

2014, "Aiden," born on June 16, 2012, and "Hunter," born on February 14, 2011. [1] In an order entered on December 18, 2020, this Court also allowed respondents' joint petition for writ of certiorari to review the trial court's March 4, 2019 permanency planning order eliminating reunification from the children's permanent plan. *See* N.C.G.S. § 7B-1001(a1)(2), (a2) (2019); *see also* N.C.R. App. P. 21(a)(1) (authorizing certiorari review "when the right to prosecute an appeal has been lost by failure to take timely action[.]"). We now affirm the trial court's orders with regard to respondent-mother and respondent-father.

## I. Procedural History

On January 2, 2017, the Wilkes County Department of Social Services (DSS) received a child protective services (CPS) report stating that Ava, Aiden, and Hunter's home lacked heat and running water and had holes in the floor. The same day, law enforcement came to the residence to investigate a reported robbery in which a man wearing a ski mask brandished a toy gun while attempting to steal medication belonging to a friend of respondent-mother. Officers found drug paraphernalia in the home, and two of the children identified respondent-father as the robber. Law enforcement reported finding used hypodermic needles in the home, raising "concerns about improper supervision and ongoing substance abuse." DSS was notified that day that "mom and the children resided in a home with no running water or heat and

---

[1] We use these pseudonyms to protect the juveniles' identities and for ease of reading.

holes in the floor." In subsequent drug screens, respondent-mother tested positive for THC and benzodiazepine.[2] Respondent-father tested positive for methamphetamine and benzodiazepine.

¶ 3 On January 3, 2017, DSS obtained nonsecure custody of the children and filed petitions alleging they were neglected juveniles under N.C.G.S. § 7B-101(15) (2019). Specifically, the petitions alleged that the children were neglected because they did not receive proper supervision from their parents and lived in an environment injurious to their welfare. Because of this, respondent-mother was asked to find appropriate housing for the family, and she subsequently moved in with the children's paternal grandmother. Respondent-father "was asked to move out of the home due to inappropriate housing arrangements."

¶ 4 After a hearing on February 6, 2017, the trial court entered an order adjudicating the children neglected. In lieu of written findings, the trial court found that respondents had stipulated to the facts stated in the court summary prepared by DSS and incorporated the document into the order by reference. According to the court summary, respondents' CPS history began in 2013 when one child fell and hit his head while under respondent-mother's care, though the case was closed because neglect was not substantiated. Then, in 2016, there were concerns of "substance

---

[2] Respondent-mother has a valid prescription for Xanax, a brand-name benzodiazepine.

abuse by the parents and improper care of the children." Later that year, all three children underwent medical exams which showed medical or remedial neglect. Due to this, the family went into case management, and "[b]oth parents were substantiated on for improper medical/remedial care."

¶ 5 Per a separate disposition order, legal and physical custody of the juveniles was to remain with DSS. The trial court granted respondents semi-monthly, one-hour periods of supervised visitation, "contingent upon clean drug screens." The court ordered DSS to conduct a home study of the paternal grandmother.

¶ 6 Respondents each entered into a DSS case plan requiring them to provide DSS with a written statement of the reasons their children were placed in foster care. Further, both respondents had to obtain substance abuse assessments; complete parenting classes; obtain and maintain stable employment and appropriate housing; sign a voluntary support agreement requiring payment of timely child support; and attend regular visitation with the children, conditioned upon negative drug screens. Respondent-father was also required to complete anger management classes.

¶ 7 At the initial review hearing on June 5, 2017, the trial court found respondent-mother had "completed most of the requirements of her family service case plan[,]" including substance abuse treatment and parenting classes. Respondent-mother had signed a voluntary support agreement and had a "small child support arrearage." She had submitted to random drug screens and regularly attended visitation with

the children. However, while DSS was unable to inspect the interior of respondent-mother's home at that time, the exterior was found to be in poor condition. Respondent-father had "made practically no progress" on his case plan, and he was not attending visitations or maintaining regular contact with the social worker.

¶ 8 On December 4, 2017, the trial court held a permanency planning hearing and established a primary permanent plan of reunification with a concurrent plan of custody with a court-approved caretaker. At the time of the hearing, respondent-father was incarcerated for a probation violation and had made no child support payments despite entering into a voluntary support agreement. The trial court found that respondent-mother was unemployed and "behind in her child support[.]" Additionally, an inspection of respondent-mother's home revealed that the condition of her residence was unclean, "very cluttered[,]" and "not appropriate at this time." Respondent-mother was living with her boyfriend Thomas and their infant child. The trial court further found that Ava, Aiden, and Hunter had "indicated that they are afraid of [Thomas,]" and that respondent-mother had "advised the social worker that she will separate herself from [Thomas] if necessary to regain custody of her children."

¶ 9 Following a review hearing on September 18, 2018, the trial court entered a permanency planning order on March 4, 2019. This order eliminated reunification and changed the primary plan to adoption with the secondary plan being custody with

an approved caretaker.  The court relieved DSS of further reunification efforts while noting that "[e]ach parent, through counsel, preserves their right to appeal the Court's decision to cease reunification efforts." However, respondents failed to file written notice preserving their right to appeal the order eliminating reunification from the permanent plan, as required by N.C.G.S. § 7B-1001(a1)(2) which states

> (a1) In a juvenile matter . . . only the following final orders may be appealed directly to the Supreme Court:
>
> . . . .
>
> (2) An order eliminating reunification as a permanent plan under G.S. 7B-906.2(b), if all of the following conditions are satisfied:
>
> a. The right to appeal the order eliminating reunification has been preserved in writing within 30 days of entry and service of the order.
>
> b. A motion or petition to terminate the parent's rights is filed with 65 days of entry and service of the order eliminating reunification and both of the following occur:
>
> (1) The motion or petition to terminate rights is heard and granted.
>
> (2) The order terminating parental rights is appealed in a proper and timely manner.

N.C.G.S. § 7B-1001(a1)(2) (2019).

¶ 10        DSS later filed petitions to terminate respondents' parental rights in Ava, Aiden, and Hunter.  On June 9, 2020, the trial court held a hearing on the petitions,

and on June 30, 2020, the trial court entered orders terminating respondents' parental rights.

¶ 11 In adjudicating grounds for termination, the trial court concluded respondents had: (1) neglected the children under N.C.G.S. § 7B-1111(a)(1); (2) willfully left the children in a placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to their removal under N.C.G.S. § 7B-1111(a)(2); and (3) willfully failed to pay a reasonable portion of the children's cost of care in DSS custody under N.C.G.S. § 7B-1111(a)(3). With regard to respondent-mother, the trial court further concluded the children were dependent juveniles under N.C.G.S. § 7B-1111(a)(6), because she was incapable of providing proper care and supervision for the children and lacked an appropriate alternative childcare arrangement. The trial court then considered the dispositional factors in N.C.G.S. § 7B-1110(a) and determined it was in the children's best interests that respondents' parental rights be terminated.

¶ 12 Respondents filed notice of appeal from the termination orders. By an order entered on December 18, 2020, this Court allowed respondents' joint petition for writ of certiorari to review the March 4, 2019, permanency planning order eliminating reunification from the permanent plan as part of their appeal.

## II. Order Eliminating Reunification from the Permanent Plan

¶ 13 Respondents contend the trial court erred when it eliminated reunification

from the children's permanent plan in the March 4, 2019, permanency planning

order. We disagree.

## A. Standard of review

> This Court's review of a permanency planning review order "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law." The trial court's findings of fact are conclusive on appeal if supported by any competent evidence."

*In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 14 (quoting *In re L.M.T.*, 367 N.C. 165,

168, 752 S.E.2d 453, 455 (2013)). Uncontested findings are binding on appeal. *Id.*

¶ 15.

The trial court's dispositional choices—including the decision to eliminate

reunification from the permanent plan—are reviewed for abuse of discretion. *In re*

*J.H.*, 373 N.C. 264, 267–68, 837 S.E.2d 847, 850 (2020). "An abuse of discretion occurs

when the trial court's ruling is so arbitrary that it could not have been the result of a

reasoned decision." *Id.* at 268, 837 S.E.2d at 850.

When this Court reviews an order eliminating reunification from the

permanent plan with an order terminating parental rights, "we consider both orders

together" as provided in N.C.G.S. § 7B-1001(a2). *In re L.M.T.*, 367 N.C. 165, 170, 752

S.E.2d 453, 457 (2013). Therefore, "incomplete findings of fact in the cease

reunification order may be cured by findings of fact in the termination order."[3] *Id.*

¶ 17    As an initial matter, we note the record on appeal does not include a transcript of the September 18, 2018, permanency planning hearing or a narrative of the hearing testimony. *See* N.C R. App. P. 9(a)(1)(e) (stating that the record on appeal shall contain information "necessary for an understanding of all issues presented on appeal.") Because respondents have failed to include a narration of the evidence, or a transcript of the trial court proceedings with the record, we presume the findings made by the trial court are supported by competent evidence. *See Summerlin v. Carolina & N.W. Ry. Co.,* 133 N.C. 550, 557, 45 S.E. 898, 901 (1903) (deciding that it is the responsibility of the appellant to assemble the record in such a way as to show error, otherwise the Court cannot presume error.); *see also In re A.R.H.B.*, 186 N.C. App. 211, 219, 651 S.E.2d 247, 253 (2007), *appeal dismissed*, 362 N.C. 235, 659 S.E.2d 433 (2008) (finding that in the absence of a transcript "[t]he longstanding rule is that there is a presumption in favor of regularity and correctness in proceedings in the trial court, with the burden on the appellant to show error." (citation and quotation

---

[3] At the time of our decision in *In re L.M.T.*, the parent's right to appeal from a permanency planning order was triggered by the trial court's ceasing of reunification efforts, rather than its elimination of reunification from the permanent plan as in current N.C.G.S. §§ 7B-1001(a)(5) and (a1)(2) (2019). *In re L.M.T.*, 367 N.C. at 167–70, 752 S.E.2d at 455–57 (discussing former N.C.G.S. §§ 7B-507(b)(1) and 7B-1001(a)(5) (2011)). Section 7B-906.2 now directs the trial court to "order the county department of social services to make efforts toward finalizing the primary and secondary permanent plans" until permanence is achieved. N.C.G.S. § 7B-906.2(b). The elimination of reunification from the permanent plan thus implicitly relieves the department of its duty to undertake reunification efforts pursuant to N.C.G.S. § 7B-906.2(b).

marks omitted)). To the extent respondents challenge any of the findings in the March 4, 2019, permanency planning order on evidentiary grounds, those challenges cannot succeed.

**B. Sufficiency of findings**

¶ 18    Respondent-mother contends the permanency planning order lacks the findings required by N.C.G.S. § 7B-906.1(d)(3) (2019) and N.C.G.S. § 7B-906.2(b) (2019) to eliminate reunification from the children's permanent plan.

¶ 19    Subdivision 7B-906.1(d)(3) applies at all review and permanency planning hearings following an adjudication of abuse, neglect, or dependency. This statute requires the trial court to "make written findings regarding . . . [w]hether efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time."[4] N.C.G.S. § 7B-906.1(d)(3).

¶ 20    Subsection 7B-906.2(b) provides, in pertinent part, that reunification shall remain a part of the juvenile's permanent plan unless the trial court "made findings under . . . G.S. 7B-906.1(d)(3) . . . or the court makes written findings that

---

[4] Subsection 7B-906.1(d) includes seven subdivisions and provides that, "the court shall consider the following criteria and make written findings regarding those that are relevant[.]" N.C.G.S. § 7B-906.1(d). This Court has construed virtually identical language in N.C.G.S. 7B-1110(a) (2019)—which governs the dispositional stage of a termination of parental rights proceeding—"to require written findings only as to those factors for which there is conflicting evidence." *In re E.F.*, 375 N.C. 88, 91, 846 S.E.2d 630, 633 (2020) (citing *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019)).

reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."[5]   N.C.G.S. § 7B-906.2(b).   "The trial court's written findings must address the statute's concerns but need not quote its exact language." *In re L.M.T.*, 367 N.C. at 168, 752 S.E.2d at 455 (interpreting former N.C.G.S. § 7B-507(b)(1) (2011)).

The trial court made the following findings with regard to respondent-mother's progress and prospects for reunification:

> 5.     The mother signed her case plan on February 27, 2017.  She completed some of the items of her case plan. She completed substance abuse classes, parenting classes, and signed a voluntary support agreement.  The mother has made a few child support payments.  She has a child support arrearage in excess of $2,000.00.  The mother's employment status is unclear.  She has reported work at Lydall, Van Heusen, the Candle Company, and Tyson.
>
> 6.     The condition of the mother's home has been a concern throughout the pendency of these cases.  Each time the mother has moved she has failed to keep a suitable and clean residence.
>
> 7.     The mother has lived with her boyfriend, Thomas . . ., throughout the pendency of these cases. The children have consistently indicated that they are afraid of [Thomas] and they have described, in detail, incidents of domestic violence perpetrated by [Thomas] against their mother.  [Thomas] signed a case plan; however, he did not complete the plan with the exception of taking a few random drug screens.

---

[5] Subsection 7B-906.2(b) also allows the trial court to exclude reunification from the permanent plan if "the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), [or] the permanent plan is or has been achieved . . . ." N.C.G.S. § 7B-906.2(b).

. . . .

9 Both parents have been allowed supervised visitation, twice monthly for one hour, contingent on passing drug screens. The mother missed visits from April through July 2018. The mother's visits have been appropriate and she has done well with the children during her visits. . . .

10. The mother was ordered to undergo a psychological evaluation with Nancy Sizemore, MA, LPA. Ms. Sizemore submitted her report in August 2018. She diagnosed the mother with the following conditions:

- Borderline intelligence
- Attention deficit hyperactivity disorder ("ADHD")
- Generalized anxiety disorder
- Paranoid personality disorder
- Mild neurocognitive disorder

11. Ms. Sizemore opined that and the court finds the mother does not appear able to make appropriate decisions in the best interests of the children and reunification is not likely to be in the best interest of the children. The mother does not appear to learn from past mistakes and blames others for her situation. She does not appear capable to make the necessary changes in her life to provide a safe and secure environment for the children.

12. There are no appropriate relative placements for the children. . . .

13. It is not possible for the children to be returned to the home of a parent immediately or within the next six months and it would be contrary to the children's health and safety and their general welfare to be returned to the home of a parent. The parents have not completed their case plans. The mother is unable to appropriately parent the children. The mother has not separated herself from Thomas. . . . Neither parent has demonstrated such

stability which would warrant the children being returned to their care. As a result, the Court finds that the permanent plan should be changed from reunification to a primary permanent plan of adoption and a secondary plan of custody with an approved caretaker. DSS should be relieved of any further obligation to attempt to reunify the children with a parent.

¶ 22 We find no merit to respondent-mother's argument. Although the trial court did not use the precise language of N.C.G.S. §§ 7B-906.1(d)(3) and -906.2(b) in its findings, the court addressed the substance of both statutes' concerns. *See In re L.M.T.*, 367 N.C. at 168, 752 S.E.2d at 455 ("The trial court's written findings must address the statute's concerns, but need not quote its exact language."). The trial court also found sufficient evidentiary facts that demonstrate the basis for its findings of fact: "[i]t is not possible for the children to be returned to the home of a parent immediately or within the next six months *and it would be contrary to the children's health and safety and their general welfare to be returned to the home of a parent*." (emphasis added). Specifically, the trial court cited respondent-mother's failure to obtain stable and appropriate housing or employment, her continued cohabitation with Thomas despite the children's detailed accounts of his domestic violence against her, the unfavorable results of her psychological evaluation, and her apparent inability "to learn from past mistakes and . . . make the necessary changes in her life to provide a safe and secure environment for the children."

¶ 23 Respondent-mother insists the evidence and the trial court's findings show

that "[r]eunification efforts between Ava, Aiden, Hunter and their mother would not have been clearly unsuccessful," given her progress in completing some components of her case plan. As explained above, however, the trial court's findings of fact support its conclusion of law that reunification with either parent would be "contrary to the children's health and safety[.]" Accordingly, we affirm the order eliminating reunification from the permanent plan as to respondent-mother.

¶ 24    Respondent-father claims the trial court failed to make sufficient findings to comply with N.C.G.S. § 7B-906.2(d)(1)–(4) (2019) in eliminating reunification from the children's permanent plan. Subsection 7B-906.2(d) requires the trial court to

> make written findings as to each of the following, which shall demonstrate the [parent's] degree of success or failure toward reunification:
>
> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C.G.S. § 7B-906.2(d)(1)–(4). While the findings need not track the statutory language, they "must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's

health, safety, and need for a safe, permanent home within a reasonable period of time." *In re L.E.W.*, 375 N.C. 124, 129–30, 846 S.E.2d 460, 465 (2020). Moreover, as previously noted, "incomplete findings of fact in the cease reunification order may be cured by findings of fact in the termination order." *In re L.M.T.*, 367 N.C. at 170, 752 S.E.2d at 457.

¶ 25    Here, the permanency planning order includes the following findings regarding respondent-father's progress and prospects for reunification:

> 8.      The father signed a case plan on April 6, 2017. He has been in and out of prison and treatment for substance abuse. As a result of his incarceration and treatment the father has only had three visits with the children since they have been in DSS custody. He signed a voluntary support agreement and has a child support arrearage in excess of $5,000.00
>
> 9.      Both parents have been allowed supervised visitation, twice monthly for one hour, contingent on passing drug screens. . . . As noted above, the father has only had three visits with the children during the time that they have been in DSS custody.
>
> . . . .
>
> 12.      There are no appropriate relative placements for the children. . . .
>
> 13.      It is not possible for the children to be returned to the home of a parent immediately or within the next six months and it would be contrary to the children's health and safety and their general welfare to be returned to the home of a parent. The parents have not completed their case plans. . . . Neither parent has demonstrated such stability which would warrant the children being returned to their care. As a result, the Court finds that the

permanent plan should be changed from reunification to a primary permanent plan of adoption and a secondary plan of custody with an approved caretaker. DSS should be relieved of any further obligation to attempt to reunify the children with a parent.

¶ 26　　In its three orders terminating respondents' parental rights, the trial court listed the requirements of respondent-father's case plan and made the following additional findings regarding the N.C.G.S. § 7B-906.2(d) criteria:[6]

> 25.　The Respondent-Father was incarcerated from November 2017 until January 2018.
>
> 26.　The Respondent-Father failed to complete his anger management assessment.
>
> 27.　The Respondent-Father signed a voluntary support agreement in 2017 to pay child support in the amount of $295.00 per month. . . . At the time of the termination hearing, [he] had a child support arrearage of approximately $10,000.00.
>
> . . . .
>
> 29.　The Respondent-Father participated in a substance abuse assessment and went through an inpatient treatment program in the DART program.
>
> 30.　The Respondent-Father suffered a substance abuse relapse in September 2019. On September 23, 2019, the Respondent-Father was ordered to submit a drug screen by the Court. This drug screen was positive for methamphetamine.
>
> 31.　The Respondent-Father has not consistently

---

[6] The trial court entered a separate termination order for Ava, Aiden, and Hunter. The three orders contain virtually identical findings of fact and conclusions of law, altered only to account for the name, age, and sex of the child at issue.

submitted himself for drug screening requested by DSS. He was asked to submit to forty-one (41) drug screens but only took twelve (12) during the pendency of the underlying juvenile action.

32. The Respondent-Father also refused to take some drug screens. . . .

33. The Respondent-Father has not consistently participated in visitation with the minor child[ren]. During the pendency of the underlying juvenile action, the Respondent-Father could have participated in forty (40) supervised visits with the child[ren] but only had five (5) visits.

34. The Respondent-Father did not complete parenting classes.

. . . .

45. . . . Neither parent made any appreciable progress in their case plan. Neither Respondent has shown that they could serve as a responsible custodian for the child. Neither parent has maintained stable and appropriate housing.

As respondent-father does not contest any of these findings, they are binding on appeal.

¶ 27 Respondent-father first contends that the trial court's bare finding that he "ha[d] not completed" his case plan at the time of the permanency planning hearing is insufficient to address the criteria required by N.C.G.S. § 7B-906.2(d)(1). However, the trial court made additional findings that satisfy N.C.G.S. § 7B-906.2(d)(1). Specifically, the trial court found that respondent-father: had been "in and out of prison and treatment for substance abuse" since signing his case plan on April 6,

2017; had visited the children just three times in the twenty months since they entered DSS custody; had accumulated "a child support arrearage in excess of $5,000.00"; and had not "demonstrated such stability which would warrant the children being returned to [his] care." Additional findings in the termination orders include that, although he obtained a substance abuse assessment and attended inpatient treatment through the DART program, respondent-father: failed to complete an anger management assessment or parenting classes; failed to secure stable housing; attended fewer than one-third of the drug screens requested by DSS and refused to submit to other screens; and made no "appreciable progress" on his case plan even at the time of the termination hearing in June 2020. *See generally In re L.M.T.*, 367 N.C. at 170, 752 S.E.2d at 457 (concluding that "incomplete findings of fact in the cease reunification order may be cured by findings of fact in the termination order"). Accordingly, these findings more than satisfy the requirements of N.C.G.S. § 7B-906.1(d)(1).

¶ 28    Respondent-father further asserts the trial court made "no findings" addressing the remaining criteria in N.C.G.S. § 7B-906.2(d)(2)–(4). We disagree.

¶ 29    While not utilizing the statutory language, the trial court's findings "address the necessary statutory factors by showing that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a

reasonable period of time[.]" *In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 16 (cleaned up). The findings depict respondent-father's minimal degree of engagement with his case plan and cooperation with DSS, specifically with DSS's requests for drug screens. In addition to noting respondent-father's attendance at the hearing, the trial court found respondent-father had been "in and out of prison," undergone "treatment for substance abuse," and "ha[d] not consistently submitted himself for drug screening requested by DSS[.]" These findings reflected respondent-father's less-than-consistent availability to the court and DSS.

¶ 30 With regard to N.C.G.S. § 7B-906.2(d)(4), the trial court found that respondent-father was incarcerated from November 2017 to January 2018; that he failed to address the anger management and parenting skills components of his case plan; that he either failed to attend or refused to participate in most of the requested drug screens requested by DSS; that he failed to obtain stable housing; and that "it would be contrary to the children's health and safety and their general welfare to be returned to" his care. Therefore, the trial court addressed the purpose of N.C.G.S. §7B-906.2(d)(4).

¶ 31 Respondent-father next argues the trial court failed to make the conclusions of law required by N.C.G.S. § 7B-906.2(b)—i.e., "that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile[s'] health or safety." However, the trial court satisfied the substance of N.C.G.S. § 7B-906.2(b) by finding

that "[i]t is not possible for the children to be returned to the home of a parent or within the next six months *and it would be contrary to the children's health and safety and their general welfare to be returned to the home of a parent*." (emphasis added). *See In re L.M.T.*, 367 N.C. at 169, 752 S.E.2d at 456 (holding that "[w]hile [the] findings of fact do not quote the precise language [the statute], the order embraces the substance of the statutory provisions requiring findings of fact that further reunification efforts "would be futile" or "would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.").

¶ 32    To the extent respondent-father separately contends the trial court's evidentiary findings focus solely on his "completion of a case plan" and, therefore, do not support its findings of fact under N.C.G.S. § 7B-906.2(b), we conclude the court's findings adequately explain the basis for its determination that there were no realistic prospects for reunification.  At the time of the permanency planning hearing, the children had been in DSS custody for more than twenty months, and respondent-father had been afforded more than nineteen months to remedy the conditions leading to their adjudication as neglected in February 2017.  Respondent-father continued to engage in activities resulting in his incarceration,[7] repeatedly refused to

---

[7] Although respondents have not provided this Court with a transcript of the permanency planning hearing, the record suggests respondent-father had been incarcerated for violating his probation.

submit to drugs screens, and had made no meaningful effort to engage with his case plan by attaining personal stability or providing support for the children. These facts fully support a determination that returning the children to respondent-father at any time in the foreseeable future would be contrary to their health, safety, and general welfare. *See In re L.R.L.B.*, 377 N.C. 311, 2021-NCSC-49 ¶ 25 (stating that the "trial court thus made the finding required by N.C.G.S. § 7B-906.2(b) to eliminate reunification from the permanent plan" by finding "[t]hat further reasonable efforts to prevent or eliminate the need for placement of the juvenile are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time.").

¶ 33        Finally, respondent-father claims the trial court failed to make the findings required by N.C.G.S. § 7B-906.2(c) (2019), which provides:

> (c) Unless reunification efforts were previously ceased, at each permanency planning hearing the court shall make a finding about whether the reunification efforts of the county department of social services were reasonable. In every subsequent permanency planning hearing held pursuant to G.S. 7B-906.1, the court shall make written findings about the efforts the county department of social services has made toward the primary permanent plan and any secondary permanent plans in effect prior to the hearing. The court shall make a conclusion about whether efforts to finalize the permanent plan were reasonable to timely achieve permanence for the juvenile.

¶ 34        The trial court's orders refer to DSS's efforts with respondent-father, DSS's consideration of relative placements for the children, visitations by respondent-

father, and the voluntary support agreement entered with DSS. The termination order includes additional findings of fact detailing DSS's efforts, including efforts relating to the development and implementation of a case plan tailored to assist respondent-father and respondent-mother in correcting the conditions that led to Ava, Aiden, and Hunter's removal in order to facilitate reunification; home inspections of respondent-mother's residence; offering respondent-mother's boyfriend the opportunity to participate in a case plan; requests for drug screens offering forty supervised visitations for respondent-father; providing transportation for supervised visitations for respondent-father; and attempts to and verification of respondent-father's reported residences. The orders which detail the efforts made by DSS to reunify the children with respondent-father, in addition to other findings related to efforts with respondent-mother, include "written findings about the efforts the county department of social services has made toward the primary permanent plan and any secondary permanent plans in effect prior to the hearing," N.C.G.S. § 7B-906.2(c).[8]

---

[8] The trial court's findings also state that a written report submitted by the DSS social worker is "incorporated herein as Findings of Fact." However, that report is not included in the record on appeal. Although the document's absence does not affect our ruling here as the trial court made the necessary findings of fact as to DSS's efforts, we reiterate the appellant's burden of assembling a record on appeal that affirmatively demonstrates the errors asserted in the appeal.

As the trial court may consider such materials as the written report submitted by a DSS social worker at a permanency planning hearing, this report likely set forth additional details concerning DSS's efforts that the trial court found relevant. *See* N.C.G.S. § 7B-906.1(c) (2019) ("The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the

While the trial court's orders lack an express finding using the term "reasonable" or "reasonableness" regarding DSS's efforts, this Court has recognized that in regard to other statutory requirements for findings in a trial court order, "[t]he trial court's written findings must address the statute's concerns, but need not quote its exact language." *In re L.M.T.*, 367 N.C. at 168, 752 S.E.2d at 455 (addressing sufficiency of findings to satisfy former N.C.G.S. § 7B-507(b)(1) (2011)); *see also In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 16 (addressing sufficiency of findings to satisfy N.C.G.S. § 7B-906.2(d)). We conclude that the trial court's findings of fact address the statutory concern of N.C.G.S. § 7B-906.2(c).

¶ 35        Our conclusion is further supported by the failure of respondent-father to identify how DSS's efforts for reunification were not reasonable. Respondent-father claims that "the efforts of DSS toward reunification were not reasonable, particularly with unreasonable limits on the children's time with respondent-father," but we find no merit to his complaint.  Pursuant to N.C.G.S. § 7B-905.1, it is the trial court's duty to "provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation."  N.C.G.S. § 7B-905.1(a) (2019).  It was not DSS, but the trial court that made respondents' visitation with the children "contingent upon clean drug screens" as part of its initial "Juvenile

---

most appropriate disposition."). To the extent the report was submitted to the trial court and is germane to his appeal, it was incumbent upon respondent-father to make it a part of the appellate record.

Disposition Order" entered on February 14, 2017. The trial court maintained this condition in each subsequent order. Whatever actions DSS must undertake to meet the "reasonable efforts" standard, it is not obliged to defy the trial court's orders. It was also the trial court that established that DSS was not "required to provide visits to any incarcerated parent[,]" and significantly, there is no indication that respondent-father requested visitation with the children while incarcerated and only exercised five out of forty supervised visitations offered by DSS. Accordingly, we reject respondent-father's assignment of error by the trial court or DSS.

### III. Orders Terminating Respondents' Parental Rights

¶ 36        Respondent-mother contends the trial court erred in adjudicating the existence of grounds for the termination of her parental rights under N.C.G.S. § 7B-1111(a). Respondent-father does not raise any claims of error with regard to the termination orders.

### A. Standard of Review

¶ 37        Under this Court's well-established standard of review,

> we review a trial court's adjudication of grounds to terminate parental rights to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal. The trial court's conclusions of law are reviewable de novo on appeal.

*In re B.T.J.*, 377 N.C. 18, 2021-NCSC-23, ¶9 (cleaned up). This Court has also held

that "an adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. Therefore, if this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re S.R.F.*, 376 N.C. 647, 2021-NCSC-5 ¶ 9 (quoting *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020)).

¶ 38     We will address the trial court's adjudication that respondent-mother willfully failed to pay a reasonable portion of the children's cost of care under N.C.G.S. § 7B-1111(a)(3). Under this provision, the trial court may terminate the rights of a parent whose child is in DSS custody if "the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3). The determinative six-month period in this case is October 23, 2018, to April 23, 2019, the day DSS filed its petitions to terminate respondents' parental rights.

¶ 39     The trial court made the following findings of fact pertinent to its adjudication under N.C.G.S. § 7B-1111(a)(3) and to respondent-mother's arguments on appeal:

> 3.     From the preliminary hearing held before the trial of this action, the petitioner presents the following issues for adjudication:
>
>           . . . .

c.      The minor children have been in the care and custody of DSS for a continuous period of six (6) months or more next preceding the filing of these petitions. During this period, the Respondents have willfully failed to pay a reasonable portion of the costs of care for the minor children, although each of the parents has been physically and financially able to do so N.C.G.S. § 7B-1111(a)(3);

. . . .

. . . .

6.      The minor children have been in the legal and physical custody of DSS at all times since January 10, 2017.

. . . .

21.      The Respondent-Mother does not have a valid driver's license and relies on her mother and Thomas . . . for transportation.

. . . .

23.      The Respondent-Mother has not maintained stable employment. At the time of the termination hearing, she was unemployed. The Respondent-Mother has reported past work at Sonic restaurant and Lydall Manufacturing. She has also reported work as a babysitter.

24.      The Respondent-Mother signed a voluntary support agreement to pay child support for all of her children in the amount of $112.00 per month. The Respondent-Mother has failed to consistently pay child support and currently has a child support arrearage of $3,953.00. The Respondent-Mother's last child support payment was made on October 15, 2018.

. . . .

38.      DSS has expended significant funds providing for

the cost of care for the minor children since they have been in care. DSS has expended the sum of $1,564.00 per month per child since the children have been in custody beginning in January 2017.

39. The Respondents have failed to pay a reasonable portion of the cost of care for the minor children. Each of the Respondents has had the physical ability to engage in employment and to provide support for the minor child.

. . . .

46. Each Respondent has willfully failed to pay a reasonable portion of the cost of care for the minor children while they have been in the care and custody of DSS.

¶ 40    Based on these findings, the trial court concluded as follows:

2. The Petitioner has proven the following statutory grounds for terminating the Respondent-Mother's parental rights by clear, cogent, and convincing evidence:

. . . .

c. The Respondent-Mother has willfully failed to pay a reasonable portion of the cost of care for the juveniles, although she has had the ability to do so, while the children have been in the custody of DSS N.C.G.S. § 7B-1111(a)(3).

¶ 41    Respondent-mother challenges the trial court's finding that her nonpayment of support was willful in Finding of Fact 46 and Conclusion of Law 2(c). "The willfulness of a parent's actions is a question of fact for the trial court." *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020).

¶ 42    Respondent-mother acknowledges having paid nothing toward the children's cost of care during the six months at issue. However, she contends the trial court's

order fails to support a finding of willfulness because "there are no findings that address [her] income, employment, or capacity for the same during the six-month period relevant to [N.C.G.S. §] 7B-1111(a)(3)." We disagree.

¶ 43 "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *In re S.E.*, 373 N.C. 360, 366, 838 S.E.2d 328, 332 (2020) (quoting *In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981)). Here, the parents signed a voluntary support agreement. A voluntary support agreement has "the same force and effect as an order of support entered by that court, and shall be enforceable and subject to modification in the same manner as is provided by law for orders of the court in such cases." N.C.G.S. § 110-132(a3) (2019).

¶ 44 The evidence and the trial court's findings show respondent-mother paid nothing toward the children's cost of care during the six-month period immediately preceding DSS's filing of the petitions to terminate her parental rights, despite having agreed to pay $112.00 per month in support and having demonstrated an ability to work by multiple reported periods of employment. Respondent-mother never moved to modify or nullify the voluntary agreement, and she was thus subject to a valid order "that established her ability to financially support for her children." *In re J.M.*, 373 N.C. 352, 359, 838 S.E.2d 173, 178 (2020).

¶ 45 Accordingly, we hold the trial court did not err in finding respondent-mother's

nonpayment to be willful and in concluding that grounds existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(3). Therefore, we need not review the court's additional grounds for termination under N.C.G.S. § 7B-1111(a)(1), (2), and (6).

Respondent-mother does not separately challenge the trial court's conclusion at the dispositional stage of the termination proceeding that terminating her parental rights is in the children's best interests. Accordingly, we affirm the termination orders as to respondent-mother.

## IV.    Conclusion

In both respondent-mother's and respondent-father's appeal, we affirm the trial court's order eliminating reunification from the permanent plan and the orders terminating their parental rights in Ava, Aiden, and Hunter.

AFFIRMED.