IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-84

No. 176A21

Filed 15 July 2022

IN THE MATTER OF: C.H. & J.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from orders entered on 22 February 2021 by Judge Eula E. Reid in District Court, Currituck County, and on writ of certiorari to review an order and a permanency planning order entered on 6 March 2020 by Judge Eula E. Reid in District Court, Currituck County and an order entered on 21 May 2021 by Meader W. Harriss III in District Court, Currituck County. This matter was calendared for argument in the Supreme Court on 1 July 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Courtney S. Hull for petitioner-appellee Currituck County Department of Social Services.*

*Keith Karlsson for appellee Guardian ad Litem.*

*Robert W. Ewing for respondent-appellant father.*

EARLS, Justice.

¶ 1 Respondent-father appeals from the trial court's 6 March 2020 order ceasing reunification efforts, the 6 March 2020 permanency planning order eliminating reunification as a permanent plan, and 22 February 2021 orders terminating his

parental rights to his sons, C.H. (Chris) and J.H. (James),[1] as well as the 21 May 2021 order dismissing his appeal from the 6 March 2020 orders. Because we conclude that the permanency planning order lacked findings which address one of the four issues contemplated by N.C.G.S. § 7B-906.2(d), we remand to the trial court for a further hearing and for the entry of additional findings. However, because as authorized by N.C.G.S. § 7B-1001(a2) respondent's claim of error concerning the trial court's permanency planning order is properly resolved by remand in this case, and does not necessitate vacating or reversing the challenged permanency planning order, it is presently premature for this Court to consider the trial court's orders terminating respondent's parental rights. *See* N.C.G.S. § 7B-1001(a2) (2019).

## I. Background

On 12 April 2019, the Currituck County Department of Social Services (DSS) filed juvenile petitions alleging that Chris, born November 2017, and James, born September 2018, were neglected juveniles. The petitions alleged that DSS had been providing services to the family since 19 November 2018 after it received a Child Protective Services (CPS) report alleging that the children were living in an injurious environment. The allegations in the report "involved high risk, potentially lethal behavior in front of the children such as suicidal attempts or gesturing." The petitions

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

also alleged that the parents had engaged in physical and verbal domestic violence while the children were present.

¶ 3    The family began receiving in-home services on 2 January 2019. The petitions alleged that while CPS was providing in-home services, the parents continued "to show concerning behavior regarding physical and verbal violence." The petitions also alleged concerns regarding the impact of respondent's mental illness on his ability to be the sole caregiver for the children. Respondent reported being diagnosed with bipolar disorder and schizophrenia and being prescribed four psychiatric medications.

¶ 4    The petitions further alleged that on 11 April 2019, respondent restricted DSS's access to his home and children. Respondent informed DSS that he was seeking legal counsel after complaining of DSS coming to his home unannounced after hours. He requested proper notice before DSS's arrival at his home and the presence of a supervisor. DSS obtained nonsecure custody of the children upon the filing of the juvenile petitions.

¶ 5    On 2 August 2019, the trial court entered an order adjudicating the children neglected based, in part, on stipulations by respondent. In its disposition order entered on 16 August 2019, the court ordered respondent to comply with the components of his Out-of-Home Services Agreement, which required him to participate in mental health therapy to include domestic violence, anger

management, and a substance abuse assessment and follow all recommendations; comply with all recommendations from his parental capacity evaluation; secure and maintain housing; participate in a group parenting education class and demonstrate skills learned during visitation; comply with the child support enforcement agency; and seek and maintain employment. The court awarded respondent two and a half hours of supervised visitation twice per week.

¶ 6     On 18 November 2019, DSS suspended respondent's visitations with his children due to concerns regarding respondent's emotional and mental stability after he "demonstrated volatile and hostile behavior while in the presence of [his] children during visitation[s]." During the 18 November 2019 visit, respondent told the social worker he was frustrated with Chris's behaviors and wanted to "pop" him. When the social worker informed him that "the use of any form of corporal punishment was not an acceptable form of discipline," respondent became upset and "asked how he was supposed to redirect his children if he was not allowed to do that." The social worker attempted to provide alternative discipline techniques, but respondent "was too upset to let her speak." During this interaction, respondent "continuously raised his voice, was argumentative with various [DSS] staff and displayed grandiose gestures all while holding [James] in his arms." Respondent "continued to express his frustration" and remained argumentative after the children were removed from the visit, resulting in DSS "asking to have him removed from the building."

¶ 7    The trial court held a hearing on 22 November 2019 but determined that good cause existed to continue the matter to 20 December 2019 "to allow [respondent] to provide the [c]ourt with a letter from [respondent's] therapist setting forth his progress or lack thereof[.]" The court determined respondent's visitation should remain suspended and that "the resumption of visitation should not commence until such time as [respondent], through his attorney, shall provide to the [c]ourt a current letter from his mental health provider confirming he is current and actively participating in his mental health treatment and medication management."

¶ 8    Following the 20 December 2019 hearing, the court ceased reunification efforts with respondent but continued its decision regarding a change in the permanent plan until the next hearing "to allow [respondent] to demonstrate to the court that he can progress toward reunification." The trial court entered its order from the December 2019 hearing on 6 March 2020. The court found that the "most prominent barrier" to the children's reunification with respondent is his inappropriate "display of various emotions and behaviors" including his "verbal aggression" and "combativeness" toward the social workers. The court found that respondent often called DSS "multiple times a day demanding to speak with someone and on any given day, he will ask to speak with various staff at [DSS]. If he does not get the answer he wants after speaking with one person, he will move on to the next person[,]" and some days he "called [DSS] more than ten times requesting the same information from various

workers." The court also found that respondent "often gets upset and argumentative using vulgar and threatening language, especially when he does not understand, or does not want to understand, what [DSS] staff is trying to explain to him. He will cut them off, monopolize conversation, not let them say anything, and hang up."

¶ 9 The court also found that respondent continued to minimize his involvement with the children being removed from the home and failed to "see the connection between his mental health concerns and his parenting skills." The court found respondent had only "minimally complied" with the trial court's orders and had a "pattern of starting and then stopping a service when it no longer suits his needs." The court further found that respondent "continuously demonstrates his inability to accept constructive criticism, which impedes his ability to parent his children appropriately and is a skill that he must be able to demonstrate as his children get older and begin school, especially for [Chris] who has" a severe hearing disability that requires regular attention. The court found that it was in the best interests of the children to cease reasonable efforts toward reunification with respondent "as such efforts to reunify would be clearly futile or would be inconsistent with the juveniles' health, safety, and need for a safe permanent home within a reasonable period of time." The court continued the permanent plan of reunification finding that although DSS was no longer required to make reasonable efforts toward reunification, the court "ha[d] not yet made a determination as to the best plan of care to achieve a safe,

permanent home for the children within a reasonable period of time" and continued its decision on that issue until the next hearing.

¶ 10        The court held another permanency-planning hearing on 7 February 2020. In its permanency planning order entered on 6 March 2020, the court found that the conditions which led to the filing of the petitions continued to exist and that the return of the children to either parent would be contrary to the juveniles' welfare. Respondent was arrested on 3 February 2020 on misdemeanor charges of intoxication, possession of drug paraphernalia, and resisting an officer following an incident at a gas station. The court ceased reunification efforts, changed the permanent plan to adoption with a concurrent plan of guardianship, and ordered DSS to file a petition to terminate the parents' parental rights. On 23 March 2020, respondent filed a notice to preserve his right of appeal from the 6 March 2020 order "wherein the [trial court] found that reasonable efforts to reunify the family should cease."

¶ 11        DSS filed its petitions to terminate respondent's parental rights on 20 April 2020[2] alleging that grounds existed based on neglect, willfully leaving the children in foster care without making reasonable progress to correct the conditions which led to their removal from the home, willful failure to pay a reasonable cost of the children's

_____

[2] The termination petitions also requested that the trial court terminate the mother's parental rights; however, she is not a party to this appeal.

care, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2021).

After multiple continuances, the trial court conducted a termination-of-parental-rights hearing on 6 November and 4 December 2020. In its adjudication order entered on 22 February 2021, the trial court determined grounds existed to terminate respondent's parental rights based on neglect, willfully leaving the children in foster care without correcting the conditions which led to their removal, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(2), (6). In a separate disposition order entered the same day, the court concluded that termination of respondent's parental rights was in the children's best interests. *See* N.C.G.S. § 7B-1110(a) (2021). Therefore, the court terminated respondent's parental rights. Respondent entered a notice of appeal in which he stated that he intended to appeal "the Order eliminating reunification that was filed on March 6th, 2020"; although respondent's notice of appeal also references "[t]he order terminating the Respondent-Father's rights . . . filed on February 22nd, 2021," respondent did not explicitly state that he intended to appeal the termination orders and he did not file a separate notice of appeal from the termination orders because he was "under the belief that a single Notice of Appeal needed to be filed to appeal both the ceasing of reunification efforts and the termination of parental rights."

On 14 May 2021, the guardian ad litem (GAL) moved to dismiss respondent's appeal in the trial court. The GAL argued that the notice of appeal did not give notice

that respondent was appealing from the termination orders but stated only that the termination orders were filed on 22 February 2021. The GAL further argued that because respondent did not properly file a notice of appeal from the termination orders, he did not meet the conditions set forth in N.C.G.S. § 7B-1001(a1)(2) to appeal the order eliminating reunification as the permanent plan and did not have a right to appeal the order to this Court.

¶ 14 Following a hearing, the trial court entered an order on 21 May 2021 denying the motion to dismiss respondent's appeal of the termination orders, determining that the notice of appeal was "was properly filed, and complied with N.C.G.S. [§] 7B[-]1001(a1)(1) for the purposes of appealing the Termination of Parental Rights order despite [a] scrivener's error." However, the trial court dismissed respondent's appeal of the orders ceasing reunification and eliminating reunification as a permanent plan.

¶ 15 On 1 June 2021, DSS and the GAL filed a joint motion to dismiss respondent's appeal in this Court alleging that the notice of appeal did not give notice that he was appealing the termination orders and respondent did not have a right to appeal the order eliminating reunification without a proper appeal of the termination orders.

¶ 16 Respondent filed a petition for writ of certiorari with this Court on 10 June 2021. Respondent sought review of the 21 May 2021 Order on Motion to Dismiss entered by Judge Meader W. Harriss III and from "the Order and the Permanency Planning Review Order, entered on March 6, 2020 by [the] Honorable Eula E. Reid,

ceasing reunification efforts with [respondent]."

¶ 17        DSS and the GAL filed a second motion to dismiss the appeal on 4 August 2021. By order entered on 10 August 2021, we allowed respondent's petition for writ of certiorari and denied DSS and the GAL's motions to dismiss the appeal.

## II.        Analysis

¶ 18        Respondent filed his notice of appeal from the 22 February 2021 termination of parental rights orders, and this Court allowed review by writ of certiorari of the 6 March 2020 orders which ceased reunification efforts and eliminated reunification as the children's permanent plan. *See* N.C.G.S. § 7B-1001(a1) (2019). Pursuant to N.C.G.S. § 7B-1001(a2), we "review the order eliminating reunification together with an appeal of the order terminating parental rights."

¶ 19        Respondent limits his appeal to challenges to the trial court's 6 March 2020 order and 6 March 2020 permanency planning order. Although he does not identify any error in the orders terminating his parental rights, respondent contends that the alleged reversible errors in the permanency planning order require us to vacate the termination orders under N.C.G.S. § 7B-1001(a2). *See* N.C.G.S. § 7B-1001(a2) ("If the order eliminating reunification is vacated or reversed, the order terminating parental rights shall be vacated.").

¶ 20        Our review of a permanency planning order "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the

findings support the conclusions of law." *In re L.M.T.*, 367 N.C. 165, 168 (2013) (alteration in original) (quoting *In re P.O.*, 207 N.C. App. 35, 41 (2010)). "The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re L.M.T.*, 367 N.C. at 168. "The trial court's dispositional choices— including the decision to eliminate reunification from the permanent plan—are reviewed only for abuse of discretion, as those decisions are based upon the trial court's assessment of the child's best interests." *In re L.R.L.B.*, 377 N.C. 311, 2021-NCSC-49, ¶ 11. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re J.H.*, 373 N.C. 264, 268 (2020) (quoting *In re N.G.*, 186 N.C. App. 1, 10–11 (2007), *aff'd per curiam*, 362 N.C. 229 (2008)).

**A. Ceasing Reunification Efforts**

¶ 21        Respondent first argues the trial court erred in ceasing reunification efforts with him following the 20 December 2019 hearing because reunification remained the primary plan for the children.

¶ 22        In adopting concurrent permanent plans,

> [r]eunification shall be a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), the permanent plan is or has been achieved in accordance with subsection (a1) of this section, or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety. . . . *Unless permanence has been achieved, the court shall order the county department of*

> *social services to make efforts toward finalizing the primary and secondary permanent plans and may specify efforts that are reasonable to timely achieve permanence for the juvenile.*

N.C.G.S. § 7B-906.2(b) (2019) (emphasis added).[3]

¶ 23     Here, the trial court ceased reunification efforts with respondent following the 20 December 2019 hearing. In its order entered on 6 March 2020, the court found that respondent continued to minimize his responsibility in the removal of his children from his care, did not see the connection between his mental health concerns and his parenting skills, had a pattern of noncompliance with mental health treatment recommendations, and "continuously demonstrate[d] his inability to accept constructive criticism, which impedes his ability to parent his children appropriately." The court also found that respondent's inappropriate "display of various emotions and behaviors [was] the most prominent barrier toward reunification with him and his children." The court noted that respondent "constantly complains and argues with staff about how his children" came into DSS custody and why they have not been returned to his care and responded to social workers' attempts to assist him with "opposition, combativeness, and verbal aggression." The court also found that "[d]ue to his constant verbal aggression to include cursing,

---

[3] The statute was amended effective 1 October 2021 to state that "[t]he finding that reunification efforts clearly would be unsuccessful or inconsistent with the juvenile's health or safety may be made at any permanency planning hearing, *and if made, shall eliminate reunification as a plan.*" N.C.G.S. § 7B-906.2(b) (2021) (emphasis added).

yelling, name calling, and other demeaning comments towards the current Social

Worker, [respondent] was limited to only being allowed to communicate with the

Foster Care Supervisor, . . . yet he continues to display these aggressive and

inappropriate behaviors." Therefore, the court found that

> [p]ursuant to [N.C.G.S.] §[ ]7B-906.1(d)(3), for the reasons
> set forth herein, it is in the best interest[s] of the minor
> children, [Chris] and [James], to cease reasonable efforts
> toward reunification with [respondent], as such efforts to
> reunify would be clearly futile or would be inconsistent
> with the juveniles' health, safety, and need for a safe
> permanent home within a reasonable period of time.

The court further found, however, that "the [c]ourt has not yet made a determination

as to the best plan of care to achieve a safe, permanent home for the children within

a reasonable period of time; and, therefore, pending the [c]ourt's final determination

of this issue at the next hearing, the goal for the children, [Chris] and [James], should

remain reunification."

¶ 24          Citing the Court of Appeals' decision in *In re C.S.L.B.*, 254 N.C. App. 395

(2017), in which the Court of Appeals determined that "by leaving reunification as a

secondary permanent plan for the children, Respondent-mother continued to have

the right to have [ ]DSS provide reasonable efforts toward reunifying the children

with her, and the right to have the court evaluate those efforts," *id*. at 398, respondent

argues he was entitled to have DSS continue to provide reasonable efforts toward

reunifying the children with him because reunification remained the primary

permanent plan.

However, the Court of Appeals' decision in *In re C.S.L.B.* is distinguishable from this case because it involved a court order establishing guardianship for the children as the primary permanent plan and there were no findings that the respondent-mother was uncooperative with DSS or abusive toward the social workers. *In re C.S.L.B.*, 254 N.C. App. at 396–97. Therefore, the conclusion in *In re C.S.L.B.* that it was erroneous for the trial court to relieve DSS of further reunification efforts and to cease further review hearings is not applicable here. *See id.* at 398–99. Moreover, respondent has not argued that his lack of progress from 20 December 2019 to 7 February 2020 was due to DSS's failure to provide further reunification efforts or that the termination of parental rights orders must be reversed due to the trial court ceasing reunification efforts in the 6 March 2020 order. *See In re L.E.W.*, 375 N.C. 124, 128 (2020) ("[T]o obtain relief on appeal, an appellant must not only show error, but that . . . the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." (second alteration in original) (quoting *In re B.S.O.*, 234 N.C. App. 706, 713 (2014))).

Pursuant to N.C.G.S. § 7B-906.2(b), the trial court "may specify efforts that are reasonable to timely achieve permanence for the juvenile." Here, the trial court's findings describe respondent's verbal abuse and hostile behavior toward DSS

workers, his failure to cooperate with DSS, and his multiple daily phone calls to DSS in which he refused to listen to or accept what he was being told. Based on this behavior, the trial court did not err in determining that it was reasonable for DSS to cease efforts toward reunification with respondent. The trial court at that time could also have eliminated reunification as a permanent plan but chose instead to provide respondent additional time to demonstrate his ability to make progress on his case plan. Respondent failed to do so, and the court eliminated reunification at the next permanency-planning hearing. Therefore, it was permissible for the trial court in this case to cease DSS's reunification efforts while allowing respondent an additional opportunity to demonstrate that he could comply with treatment recommendations regarding his mental health and potentially be reunited with his children.

**B. Eliminating Reunification**

Respondent next argues the trial court erred by failing to make the factual findings required by N.C.G.S. § 7B-906.2(d) before eliminating reunification as the children's permanent plans in the 6 March 2020 permanency planning order.

Under N.C.G.S. § 7B-906.2(b), the trial court may eliminate reunification as a child's permanent plan if the trial court "makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C.G.S. § 7B-906.2(b). In making such a determination, the trial court must make written findings "which shall demonstrate the degree of success or

failure toward reunification," including:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C.G.S. § 7B-906.2(d).

¶ 29         "Although 'use of the actual statutory language [is] the best practice, the statute does not demand a verbatim recitation of its language.' " *In re L.E.W.*, 375 N.C. at 129 (alteration in original) (quoting *In re L.M.T.*, 367 N.C. at 167). "Instead, 'the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.' " *Id.* at 129–30 (quoting *In re L.M.T.*, 367 N.C. at 167–68).

¶ 30         "Moreover, when reviewing an order that eliminates reunification from the permanent plan in conjunction with an order terminating parental rights pursuant to N.C.G.S. § 7B-1001(a1)(2), we consider both orders together as provided in N.C.G.S. § 7B-1001(a2)." *In re L.R.L.B.*, ¶ 22 (cleaned up). Therefore, "incomplete findings of fact in the cease reunification order may be cured by findings of fact in the

termination order." *Id.* (quoting *In re L.M.T.*, 367 N.C. at 170).

### 1. *Challenged Findings*

¶ 31      Respondent does not challenge the evidentiary support for any of the findings in the permanency planning order, and therefore they are binding on appeal. *In re T.N.H.*, 372 N.C. 403, 407 (2019). He does, however, generally challenge multiple findings in the trial court's termination orders in order to argue that the trial court's findings in the termination orders do not cure the deficiencies in the permanency planning order. Because we review the permanency planning order and the termination orders together, we first address his challenges to the trial court's findings of fact in the termination orders.

¶ 32      We review the findings of fact in a trial court's termination of parental rights adjudication order "to determine whether [they] are supported by clear, cogent and convincing evidence." *In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 17. "The trial court's dispositional findings are binding on appeal if supported by any competent evidence." *In re J.S.*, 374 N.C. 811, 822 (2020).

¶ 33      Respondent generally challenges the trial court's findings indicating that his progress and participation in his case plan was not reasonable because

> 1) he has not corrected the conditions which led to his children's removal from the home; 2) that [he] is uncooperative; 3) that he failed to consistently participate in mental health treatment; 4) he lacks consistent mental health treatment and medication management; 5) he does not have the ability to parent his children; 6) that he has

made minimal or no progress with his case plan; and 7) that he failed to maintain housing and employment.

Respondent argues these findings are not supported by competent evidence because they are based upon past circumstances that no longer exist.

¶ 34      Social worker Amanda Wood testified at the termination hearing regarding respondent's progress on his case plan goals. She testified that respondent "[m]inimally" complied with the trial court's order regarding his case plan, was not compliant with DSS in its reasonable efforts toward reunification, and was "minimally compliant" with his mental health therapy. She also testified that she did not feel respondent fully complied with the recommendations of the parental capacity evaluation and that although respondent completed parenting classes, he was not able to demonstrate what he learned during his visitations. Regarding his employment, Ms. Wood testified that respondent had multiple jobs throughout the case but that his longest employment lasted "about three weeks."

¶ 35      Ms. Wood acknowledged that respondent made some progress on his case plan but testified that his progress was very slow and that he had only recently showed improvement after the permanent plan was changed to adoption. She further testified that he had not demonstrated "a change in condition to the point that [she] would feel comfortable reunifying [respondent] with the children[.]" Ms. Wood also testified that respondent had demonstrated "a pattern of beginning services and stopping services" with both his mental health treatment and Chris's hearing impairment treatment.

¶ 36    Additionally, unchallenged findings in the adjudication order state that respondent failed to follow through with the recommendations from his parenting capacity evaluation; that there were "tremendous concerns" regarding respondent's follow through with Chris's hearing impairment treatment; and that DSS continued to have concerns regarding respondent's consistency with his mental health treatment and medication management, his history and pattern of compliance and noncompliance, and his inability to accept that his behavior contributed to the need for DSS's involvement with the family. Based on the foregoing, we hold that the challenged findings are sufficiently supported by the record evidence.

### 2. *Sufficiency of the Findings*

¶ 37    Respondent argues the trial court's findings of fact in its 6 March 2020 permanency planning order fail to address the first three mandated findings under N.C.G.S. § 7B-906.2(d) and that the findings in the termination orders do not cure these deficiencies. Although the trial court's findings of fact adequately address the issues reflected in N.C.G.S. § 7B-906.2(d)(1)–(2) and (4), we agree the findings fail to address the issues in N.C.G.S. § 7B-906.2(d)(3) regarding whether respondent "remains available to the court, the department, and the guardian ad litem for the juvenile."

¶ 38    The trial court addressed the factor under N.C.G.S. § 7B-906.2(d)(1), whether respondent is making adequate progress within a reasonable period of time, by

detailing respondent's progress and deficiencies in meeting the conditions of his case plan. The trial court made numerous findings regarding respondent's participation in therapy and visitation, respondent's employment, and respondent's housing. The court found that it was not possible to return the children to respondent's care immediately or within the next six months because he had not completed his case plan and that the conditions which led to the filing of the petitions continued to exist. Moreover, in the termination orders, the trial court found that although respondent made some progress on his case plan, "he never demonstrated to [the social worker] a change in condition such that she felt comfortable with moving forward toward reunification," and it found that "[t]he same conditions that brought these children into care continued over the year that [DSS] worked with [respondent]. The children have been in [a] placement outside of the home for more than twelve months at the time the petition[s for termination were] filed." The court also found that respondent "made some progress as to a change in condition since [DSS] intervened but his pattern of digression is concerning to the [c]ourt such that the [c]ourt feels his change in condition is insufficient under the circumstances in that he has failed to engage with [DSS] and work toward reunification." The court's findings show respondent did not address his mental health issues, "does not have the behavioral protective factors needed to parent his children[,]" and "minimizes his involvement in the children's removal from the home." These findings sufficiently address whether respondent was

making adequate progress under N.C.G.S. § 7B-906.2(d)(1).

Regarding N.C.G.S. § 7B-906.2(d)(2), whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile, the trial court's findings sufficiently describe respondent's participation with his case plan. In the termination orders, the court details respondent's progress and participation in his case plan goals and describes respondent's relationship and distrust of DSS. The court found that prior to his visitations being suspended on 18 November 2019, respondent "had been asked to leave [DSS] due to his behaviors, belligerent demeanors, cursing, and out of control behaviors at least five times." The court also found that respondent "ha[d] failed to comply with [DSS] and [c]ourt ordered goals[,]" "ha[d] been uncooperative with reunification services and efforts[,]" and "ha[d] been uncooperative with recommendations from therapists and [DSS]." These determinations satisfy the requirements of N.C.G.S. § 7B-906.2(d)(2). *See In re L.R.L.B.*, ¶ 27 (concluding that finding of fact that "featured the evidence adduced at the hearing of respondent-mother's inability to address the domestic violence, housing, and substance abuse issues which resulted in [the juvenile's] removal from her care . . . satisfy the requirements of Section 7B-906.2(d)(2)").

Respondent has not challenged the sufficiency of the findings regarding the fourth factor under N.C.G.S. § 7B-906.2(d)(4), whether the parents are "acting in a

manner inconsistent with the health or safety of the juvenile." Nevertheless, we hold the trial court sufficiently addressed the substance of N.C.G.S. § 7B-906.2(d)(4). "Although the trial court made no specific finding as to whether [respondent] was 'acting in a manner inconsistent with the health or safety of the juvenile' under the exact language of N.C.G.S. § 7B-906.2(d)(4)," *In re L.R.L.B.*, ¶ 28, the trial court found that the conditions which led to the filing of the neglect petitions continued to exist, that the parents still demonstrated "extreme animosity" toward each other and had engaged in an online argument on or about 25 January 2020, and that the return of the children to the custody of either parent "would be contrary to the welfare and best interest[s] of the juveniles." The court also concluded that DSS was "no longer required to make reasonable efforts in this matter to reunify the children with either parent as those efforts would clearly be futile or would be inconsistent with the children's health and safety, and need for a safe, permanent home within a reasonable period of time." These determinations sufficiently address N.C.G.S. § 7B-906.2(d)(4).

¶ 41      However, we agree with respondent that the trial court failed to make the findings required under N.C.G.S. § 7B-906.2(d)(3), whether respondent "remains available to the court, the department, and the guardian ad litem." Aside from acknowledging respondent's attendance at the permanency-planning hearing and noting his lack of attendance at the termination hearing on 4 December 2020, the

trial court failed to make any other findings addressing respondent's availability to the court, DSS, and the GAL. Although the court "found" that the GAL reported respondent had not had contact with her, the court did not make any determination regarding the credibility of the GAL's reporting, and this "finding" does not constitute a finding of fact. *See In re A.E.*, 379 N.C. 177, 2021-NCSC-130, ¶ 16 ("[R]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge absent an indication concerning whether the trial court deemed the relevant portion of the testimony credible." (cleaned up)).

### 3. *Remedy*

¶ 42      Respondent argues that the trial court's failure to make the required findings under N.C.G.S. § 7B-906.2(d) requires this Court to reverse the permanency planning order and vacate the resulting termination orders pursuant to N.C.G.S. § 7B-1001(a2). However, in *In re L.R.L.B.*, we determined that when the trial court substantially complies with the statute but fails to make the findings required under N.C.G.S. § 7B-906.2(d)(3), the appropriate remedy is to remand the matter to the trial court for the entry of additional findings. *In re L.R.L.B.*, ¶ 37. We reasoned that this Court did not believe "that the Legislature enacted N.C.G.S. § 7B-1001(a2) with the intention of disengaging an entire termination of parental rights process in the event that a trial court omits a single finding under N.C.G.S. § 7B-906.2(d)(1)–(4) from its trial court order which eliminates reunification from a child's permanent plan." *Id.*

¶ 35. "Unlike the specific finding that 'reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety' which is required by N.C.G.S. § 7B-906.2(b) before eliminating reunification from the permanent plan, no particular finding under N.C.G.S. § 7B-906.2(d)(3) is required to support the trial court's decision." *Id.*

Therefore, in line with our holding in *In re L.R.L.B.*, we remand this matter to the trial court for entry of additional findings in contemplation of N.C.G.S. § 7B-906.2(d)(3).

> In the event that the trial court concludes, after making additional findings, that its decision to eliminate reunification from the juvenile[s'] permanent plan[s] in its [6 March 2020] permanency planning order was in error, then the trial court shall vacate said order as well as vacate the order terminating respondent[ ]'s parental rights, enter a new permanent plan for the juvenile[s] that includes reunification, and resume the permanency planning review process. If the trial court's additional findings under N.C.G.S. § 7B-906.2(d)(3) do not alter its finding under N.C.G.S. § 7B-906.2(b) that further reunification efforts are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time, then the trial court may simply amend its permanency planning order to include the additional findings, and the [22 February 2021] order[s] terminating respondent[ ]'s parental rights may remain undisturbed.

*Id.* ¶ 37 (cleaned up).

### III.    Conclusion

Respondent does not identify any error in the orders terminating his parental

rights to Chris and James, and we do not consider the termination orders in this decision. *See In re L.R.L.B.*, ¶ 38 (declining to consider termination order when vacating permanency planning order under analogous circumstances). Regarding the 6 March 2020 order ceasing reunification efforts with respondent following the 20 December 2019 hearing, we affirm the trial court's order. Regarding the 6 March 2020 permanency planning order eliminating reunification from the permanent plan following the 7 February 2020 hearing, we "hold that the trial court sufficiently addressed the majority of the issues mandated by N.C.G.S. § 7B-906.2(d)]," and therefore we are not required to vacate that order. *Id*. However, in light of the trial court's failure to make written findings as required by N.C.G.S. § 7B-906.2(d)(3), we remand to the District Court, Currituck County, to conduct a hearing[4] and "to enter such necessary findings and to determine whether those findings affect its decision to eliminate reunification from the permanent plan pursuant to N.C.G.S. § 7B-906.2(b)." *Id*. The trial court "shall enter new or amended orders consistent with this opinion." *Id*. (citing *In re K.R.C.*, 374 N.C. 849, 865 (2020)).

---

[4] We note that the District Court Judge who entered the relevant 6 March 2020 permanency planning order is unavailable to amend it because she was appointed to fill a vacant Superior Court judge seat in April 2021. Therefore, a substitute judge is required pursuant to Rule 63 of the North Carolina Rules of Civil Procedure. The Rule 63 substitute judge will need to hold a hearing to receive evidence relating to N.C.G.S. § 7B-906.2(d)(3) and enter any necessary findings of fact in an amendment to the relevant 6 March 2020 permanency planning order. *See In re K.N.,* 2022-NCSC-88, ¶ 24 (a Rule 63 substitute judge is required to conduct a hearing to enter new findings of fact and address deficiencies noted on appeal).

AFFIRMED IN PART; REMANDED IN PART.